UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------X

TIMOTHY P. DOYLE,                               :       Civil Number:  02-CV-656(GLG)
                                                :
          Plaintiff                             :
                                                :
     v.                                         :
                                                :
TOWN OF LITCHFIELD, CROMPTON                    :
MANUFACTURING COMPANY, INC.;                    :
UNIROYAL CHEMICAL COMPANY, INC.                 :
                                                :
          Defendants.                           :       September 24, 2004
---------------------------------------------------------------X

## SECOND AMENDED COMPLAINT

    Plaintiff, Timothy P. Doyle, by his attorneys, Whitman Breed Abbott & Morgan, LLC,

alleges as follows:

### Introduction

    1.      Through this action, Plaintiff seeks compensatory and punitive damages from the

defendants based on their illegal, reckless, and/or intentional practice of disposing and/or allowing

the disposal of hazardous sludge ash in the Town of Litchfield's landfill.

    2.      Plaintiff purchased property in Litchfield approximately one-quarter mile away

from the landfill that was contaminated by leachate from the landfill.  Further, as result of the

defendants' illegal activities, Plaintiff has incurred response costs to address the pollution spread

by the defendants, and has been made to suffer grave financial injury.

**Parties**

3.     Timothy P. Doyle is an individual living at 229 Bacon Pond, #123, Woodbury, Connecticut 06798. At all relevant times herein, Doyle owned a parcel of land recorded in the Town of Litchfield, Connecticut at 521 South Plains Road, Litchfield, Connecticut 06759 (the "Property").

4.     The Town of Litchfield is a government municipality incorporated within the State of Connecticut (hereinafter the "Town"). At all relevant times hereto, the Town owned and operated the Litchfield Recycling Center located at Little Pitch Road, Litchfield, Connecticut 06759 (hereinafter the "Landfill").

5.     Crompton Manufacturing Company Inc., f/k/a Crompton Corporation ("Crompton"), is a Delaware corporation with its headquarters One American Lane, Greenwich, Connecticut. Crompton is a global marketer of specialty chemicals, polymer products and processing equipment.

6.     Uniroyal Chemical Company, Inc. ("Uniroyal") is a Delaware corporation with its principal offices at One American Lane, Greenwich, Connecticut. Uniroyal is a subsidiary of Crompton.

7.     The Naugatuck Treatment Company ("NTC") is a Connecticut corporation with its principal offices One American Lane, Greenwich, Connecticut. Upon information and belief, NTC is a wholly-own subsidiary of Crompton. Upon information and belief, NTC operated as, among other things, a waste recycling center at 50 Cherry Street, Naugatuck, Connecticut during the relevant time period hereto. Upon information and belief, and at all relevant times hereto, NTC

was operated within the meaning of 42 U.S.C. § 9601 et seq. by Crompton, Uniroyal and NTC.

(Crompton, Uniroyal and NTC are hereinafter referred to collectively as "Crompton.")

### Jurisdiction and Venue

8.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332
because this action arises under the laws of the United States.

9.    The District of Connecticut is a proper venue pursuant to 28 U.S.C. Section
1391(a)(1) because all defendants reside in the judicial district of Connecticut.

### Allegations Common To All Counts

The Doyle Property

10.    On March 11, 1996, the plaintiff and his fiancé purchased the Property which
consists of 3.58 acres located at 521 South Plains Road, at the intersection of South Plains Road
and Little Pitch Road, in the town of Litchfield. The Property contained a colonial-style farmhouse
built in 1802, a small pond, and gently sloping land.  Plaintiff and his fiancé planned on building
and running a horse breeding operation on the Property.

11.    Plaintiff soon became concerned about the condition of the water in the pond.  In the
spring of 1996, plaintiff saw floating dead fish and pollywogs and an orange haze or sheen on top
of the pond.  Plaintiff thereafter undertook an investigation wherein he tested samples of surface
water from the pond, talked to neighbors, and engaged an environmental testing company.  Doyle
contacted the Connecticut Department of Environmental Protection ("DEP") about the neighboring
Landfill and learned that the leachate from the Landfill had been the subject of previous litigation
and orders from the DEP. As a result of his investigation, Plaintiff learned that Landfill leachate
had also contaminated the Property.  Plaintiff contacted the local authorities, and through them the

United States Environmental Protection Agency (the "EPA"), about the conditions in and around the Landfill and the resulting impact on the Property.

12.    In connection with his purchase of the Property, Doyle obtained zoning and conservation permits from the Town and undertook a series of improvements on the Property to ready it for horse breeding such as removing trees, clearing land, installing a riding ring and a horse barn.

13.    Plaintiff also spent significant sums of time and money responding to the problems being caused by the leachate from the Landfill. This included additional environmental testing, blasting and excavating the land, moving dirt, capping an existing well, removing old drain pipes and installing new ones to direct surface water flow on the Property to and from the pond.

14.    In August 1996, Plaintiff and his fiancé married, moved onto the Property, and thereafter continued working toward their plan to raise a family and run a horse farm on the Property.

15.    Plaintiff also continued to spend time and money to respond to the leachate problem and contamination on the Property.

16.    Despite Plaintiff's efforts to contain, remedy or otherwise mitigate the contamination to the Property, Plaintiff was unable to correct the damage inflicted on the Property, or otherwise cease the continuing flow of leachate from the Landfill to the Property.

The Litchfield Landfill

17.    Approximately one-quarter mile to the southeast of the Property, the former Litchfield Landfill was for fifty years the town dump for solid waste disposal. It accepted a variety of residential, commercial, and industrial waste, including hazardous substances. Upon

42847                                              4

information and belief, the Landfill, still owned and operated by the Town of Litchfield, is now a waste recycling facility.

18.     The Landfill is located in a steep valley between two bedrock ridges, and grew over the years to occupy 7.4 acres of land rising to a height of 45 feet at its center.

19.     Upon information and belief, the water table in the center of the Landfill is more than 20 feet higher than the base of the refuse. Upon information and belief, the historical use of the site and its hydro-geology resulted in leachate from the Landfill entering the bedrock system underneath the Landfill and into local groundwater and surface water systems.

20.     In 1982 the DEP entered a pollution abatement order against the Town and the Landfill. (See Exhibit A.) A hydrogeological study by the engineering firm of Fuss & O'Neill was thereafter conducted by the Town. The study documented the presence of leachate contamination in the fractured bedrock adjacent to the Landfill and nearby surface waters. The Fuss & O'Neill hydrogeological study also reported that the principal pathways for leachate migration from the Landfill were to the north and south along the fracture trend in the bedrock, and that leachate also flowed toward the northwest in the general direction of the Property.

21.     In 1984, the Town submitted to the DEP a map depicting an area of approximately 350 acres surrounding the Landfill. The map depicted the areas where the DEP either had to preapprove well drilling or otherwise designate the area as a "No Soil Development Zone." (See Exhibit B).

22.     In response to the DEP order, the Town developed, adopted and implemented a landfill closure plan. The Town installed water monitoring wells, began monitoring water quality at various private wells, and extended water mains to properties near the Landfill -- i.e. Plaintiff's

42847                                     5

neighbors -- to abate the problems caused by the flow of leachate from the Landfill. Plaintiff was not aware of the measures taken by the Town until well after his purchase of the Property.

23.    Since leachate contamination from the Landfill was (and is) carried into the bedrock by water, part of the Town's closure plan involved placing a covering material composed of soil and ash derived from incinerated sludge on the top on the landfill to reduce the amount of rain and surface water entering the Landfill. Upon information and belief, hazardous substances are contained within this covering material.

24.    Upon information and belief, because the Landfill sits in a wetland area in a bedrock valley partially above the water table, the Landfill base remains saturated despite the closing of the Landfill and the ash sludge cap covering. As a result, the Landfill has and will continue to leach hazardous substances through ground water entering bedrock at the base and sides of the Landfill for many years.

25.    The Town has continued to collect and analyze water samples obtained from the various monitoring wells quarterly to detect the presence of leachate constituents at the various locations.

Crompton's Illegal Handling of Hazardous Waste

26.    Upon information and belief, starting in or about 1984, NTC began operating an "over the road program" in which truck tankers of waste were hauled to NTC.

27.    Upon information and belief, NTC accepted massive amounts of industrial waste despite Crompton not having the proper permits to accept commercial and/or industrial waste, sludge or hazardous waste at NTC.

42847                                        6

28.    Upon information and belief, the levels of hazardous substances in the waste accepted at NTC exceeded the acceptable safety levels permitted at NTC under applicable state and federal law, and constituted a danger to the environment and the community.

29.    In November 1998, the Connecticut State Attorney General's Office instituted a lawsuit against Uniroyal and NTC based on the aforementioned violations (the "AG's lawsuit").

30.    In August of 1999, Uniroyal agreed to pay $1.2 million to settle the AG's lawsuit. One million dollars of the settlement was earmarked for a special agency to restore the Naugatuck River (which was severely polluted by Crompton' illegal activities), and $200,000.00 of the settlement payment constituted a fine that was paid to the Connecticut State Treasury.

### Litchfield's Acceptance of Crompton's Sludge Ash

31.    In or about 1991, Crompton disposed of approximately 10,000 cubic yards of incinerated sludge ash from NTC in the Landfill. Upon information and belief, this sludge ash was used as part of the cover for the Landfill as described above. (See Exhibit C.)

32.    The DEP granted permission to Uniroyal and/or NTC to dispose of the 10,000 cubic yards of incinerated ash based on, among other things, representations from NTC and Uniroyal at the time that the sludge ash did not contain excessively high levels of hazardous substances and that the ash was otherwise appropriate for land disposal.

33.    The Town also authorized the disposal of NTC sludge ash at the Landfill based on the same representations provided by Uniroyal and/or NTC. Upon information and belief, Uniroyal and/or NTC failed to notify the Town, and/or the Town purposefully, recklessly and/or negligently failed to monitor and recognize, that the sludge ash was subject to certain EPA "land ban" provisions which prevented disposal of the sludge ash on land.

42847                                      7

34.    Upon information and belief, the levels of hazardous substances in the sludge ash exceeded the acceptable safety levels designated for the Landfill because, inter alia, the ash was derived from the waste incinerated at NTC that exceeded the safety levels permitted at NTC. DEP has determined that the sludge ash contains toxicity levels that are far in excess of the levels represented to the DEP at the time permission dump the ash at the Landfill was granted.

35.    The presence of hazardous substances in the sludge ash and the covering created a substantial risk of probable injury, and/or had the natural tendency to create a danger and inflict injury, upon persons and/or property and rendered the sludge ash covering ultra-hazardous, unsafe and capable of producing imminent and substantial endangerment to health and/or the environment.

36.    Furthermore, the excessive levels of hazardous substances in the sludge ash rendered the sludge ash covering intrinsically dangerous and unsafe for use as a covering for the Landfill.

37.    Upon information and belief, the hazardous substances in the sludge ash from NTC and used to cover the Landfill leached out of the ash, percolated through the ground and/or surface water and reached the Property and/or surrounding areas.

38.    Upon information and belief, the sludge ash disposed at the Landfill continues to represent a danger to the public as hazardous substances continue to leach out from the Landfill.

39.    The use of sludge ash with high levels of hazardous substances as a covering cap for a Landfill was unreasonable and/or unlawful in light of the fact that Crompton and the Town were aware, or should have been aware, that (i) the sludge ash contained hazardous substances inappropriate for land disposal, and (ii) the Landfill was susceptible to release of leachates.

40. As a result of the foregoing, Plaintiff has incurred and will continue to incur costs in responding to the release of the hazardous substances emanating from the Landfill, and in particular, the sludge ash covering.

41. As a result of the foregoing, the Property was polluted and rendered useless and without value, which in turn resulted in the destruction of plaintiff's financial investment, business plans and marriage.

## COUNT ONE

(Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") -- as to the Town)

42. Doyle repeats and realleges the allegations contained in paragraphs one through forty-one as if fully set forth herein.

43. The Town is a potentially responsible party as defined in 42 U.S.C. § 9607(a).

44. The Landfill is a facility as defined by 42 U.S.C. § 9601(a).

45. Hazardous substances, contaminants and pollutants were released from the Landfill.

46. Plaintiff has incurred response costs as a result of the aforementioned release.

47. The Town is liable for the response costs incurred by Plaintiff pursuant to 42 U.S.C. § 9601 et seq.

## COUNT TWO

(Resource Conservation & Recovery Act, 42 U.S.C. § 6972 et seq. – as to the Town)

48. Doyle repeats and realleges the allegations contained in paragraphs one through forty-seven as if fully set forth herein.

49.     The sludge ash and sludge ash covering is a hazardous waste as that term is defined in 42 U.S.C. § 6903.

50.     Crompton's transportation and disposal of the sludge ash violated the Resource Conservation & Recovery Act, 42 U.S.C. § 6972 et seq. ("RCRA").

51.     The Town's complicity, cooperation and/or contribution in the disposal, handling and/or storage of hazardous waste at the Landfill, and the sludge ash from Crompton, violated the RCRA by (a) contributing to the past and present handling, storage and disposal of hazardous waste in a manner presenting an imminent and substantial endangerment to health and the environment; and (b) violating applicable permits, standards, requirements and/or regulations regarding the handling of hazardous waste and under RCRA.

52.     As a result of the foregoing, plaintiff has been damaged.

### COUNT THREE
(Conn. Gen. Stat. § 22a-452 -- as to the Town)

53.     Doyle repeats and realleges the allegations contained in paragraphs one through fifty-two as if fully set forth herein.

54.     The Town, which was aware of the leachate problem at the Landfill, acted purposefully, recklessly and/or negligently in accepting, without review or due diligence, sludge ash that contained excessively high levels of hazardous substances as capping material for the Landfill.

55.     The Town is liable to Plaintiff for his costs incurred in containing, remedying and/or mitigating the effects of contamination to the Property from the hazardous substances in the sludge ash pursuant to Conn. Gen. Stat. § 22a-452.

## COUNT FOUR
(Strict Liability -- as to Town)

56.     Doyle repeats and realleges the allegations contained in paragraphs one through fifty-five as if fully set forth herein.

57.     The Town is strictly liable to Plaintiff based on its contribution to, or reckless disregard towards the disposal, handling and disposal of the sludge ash.

## COUNT FIVE
(Negligence Per Se – as to the Town)

58.     Doyle repeats and realleges the allegations contained in paragraphs one through fifty-seven as if fully set forth herein.

59.     Plaintiff is in the class of persons intended to be protected by CERCLA, RCRA and Conn. Gen Stat. § 22a-452.

60.     The injuries suffered by Plaintiff are the types that CERCLA, RCRA and Conn. Gen Stat. § 22a-452 are designed to prevent.

61.     The Town's aforementioned violations of CERCLA, RCRA and Conn. Gen Stat. §22a-452 were the proximate cause of Plaintiff's damages.

WHEREFORE, the Plaintiff seeks

1. Monetary Damages;

2. Injunctive Relief;

3. Costs;

4. Punitive damages;

5. Attorneys' Fees;

6. Such further and other relief as the Court deems just and proper.

THE PLAINTIFF
TIMOTHY P. DOYLE

BY _____

John S. Shaban (ct14075)
Whitman Breed Abbott & Morgan LLC
100 Field Point Rd.
Greenwich, CT 06830
203-869-3800
203-869-1951 (facsimile)
jshaban@wbamct.com

42847                                    12

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------X

TIMOTHY P. DOYLE,                                    :          Civil Number: 02-CV-656(GLG)
                                                     :
            Plaintiff                                :
                                                     :
    v.                                               :
                                                     :
TOWN OF LITCHFIELD, CROMPTON                         :
MANUFACTURING COMPANY, INC.;                         :
UNIROYAL CHEMICAL COMPANY, INC.                      :
                                                     :
            Defendants.                              :          September 27, 2004
---------------------------------------------------------X

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2004, a copy of foregoing Second Amended Complaint was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

/s/ John T. Shaban
John T. Shaban (ct14075)
Whitman Breed Abbott & Morgan LLC
100 Field Point Rd.
Greenwich, CT 06830
203-869-3800
203-869-1951 (facsimile)
jshaban@wbamct.com

56243

# Exhibit A



# STATE OF CONNECTICUT
## DEPARTMENT OF ENVIRONMENTAL PROTECTION



STATE OF CONNECTICUT
VS.
THE TOWN OF LITCHFIELD

IN THE MATTER OF AN ORDER TO THE TOWN OF LITCHFIELD TO ABATE --
POLLUTION

### O R D E R

Having found that the Town of Litchfield is a municipality
within which pollution reasonably can be anticipated in the future
under the provisions of Chapter 474a, Connecticut General Statutes
as amended, the Commissioner of Environemtnal Protection acting
under Section 25-54g hereby Orders the Town of Litchfield to take
such action as is necessary to:

1.  Investigate the extent and degree of groundwater contamination
    resulting from the operation of a sanitary landfill on Old Pitch
    Road in the Town of Litchfield.

2.  Take necessary remedial actions to minimize or eliminate the
    contamination resulting from such proactices.

The Town of Litchfield is further Ordered to accomplish the
above described program, except as may be revised by the
recommendations of detailed engineering study and agreed to by the
Commissioner of Environmental Protection in accordance with the
following schedule:

A.  On or before July 31, 1982, verify to the Commissioner of
    Environmental Protection that a qualified consultant has been
    retained to perform the necessary studies under Directive 1.

B.  On or before August 31, 1982, submit for the review and approval
    of the Commissioner of Environmental Protection a scope of study
    report for Directive 1 which includes the proposed location and
    depths of groundwater monitor wells, soil and surface water
    sampling locations, and proposed sampling program.

C.  On or before September 30, 1982, verify to the Commissioner of
    Environmental Protection that monitoring wells as per step B
    have been installed as approved by the Commissioner of
    Environmental Protection and that the proposed sampling program
    has begun.

D.  On or before November 30, 1982, submit for the review and
    approval of the Commissioner of Environemtnal Protection, a
    comprehensive hydrogeologic and engineering report which defines
    the extent and degree of contamination and establishes, as
    necessary, a specific remedial action program.

E.  On or before January 31, 1983, submit for the review and
approval of the Commissioner of Environmental Protection
contract plans and specification for the facilities and/or
procedures as defined in Step D.

Entered as an Order of the Commissioner of Environmental
Protection this  21 June 1982.

Stanley J. Pac
COMMISSIONER

ORDER NO. 3279

LITCHFIELD

SENT CERTIFIED MAIL — RRR

# Exhibit B



EXHIBIT B

# Exhibit C

 

# STATE OF CONNECTICUT
## DEPARTMENT OF ENVIRONMENTAL PROTECTION

September 20, 1991

Mr. Douglas Ritchie
Naugatuck Treatment Company
500 Cherry Street
Naugatuck, CT  06770

Re: Disposal of approximately 10,000 cubic yards of incinerated sludge ash from the Naugatuck Treatment Company, 500 Cherry Street, Naugatuck, CT.

Dear Mr. Ritchie:

The Waste Management Bureau has determined that the above referenced material is suitable for disposal at the Litchfield solid waste disposal area, subject to the following conditions:

1.  Material should not contain any free draining liquids.

2.  Material may be utilized as a component of final cover material at the landfill.  Specifically, up to 16 inches of this material may be placed on the landfill surface and then covered with 8 inches of topsoil.  The soil must meet all applicable grain size and vegetation characteristics as required by department regulations and the facility permit.

3.  Proper erosion control measures should be followed to avoid excess runoff and siltation problems that may occur.  Additionally, all necessary controls shall be taken to suppress any odors associated with the use of this material.

This determination is based on the review of information and analytical results of incinerated sludge ash samples submitted to the Waste Engineering and Enforcement Division by the Naugatuck Treatment Company, Naugatuck, CT.

Permission to dispose of this material must also be obtained from the Town of Litchfield, contact the First Selectman's office at 567-5133 for proper disposal procedures.

It is the responsibility of the Naugatuck Treatment Company to make a hazardous waste determination on all wastes generated prior to disposal and to frequently reevaluate these determinations.  This is a one time authorization for disposal of this material, any future disposal requests must be submitted to this office for review.

Please contact David McKeegan at 566-5847 if you have any questions.

Sincerely yours,

David A. Nash    for David Nash
Director
Waste Engineering & Enforcement Division
Waste Management Bureau

DAN/dkm/mdg
cc:Linda Bongiolatti, Litchfield First Selectman

(Printed on Recycled Paper)

165 Capitol Avenue · Hartford, CT 06106
An Equal Opportunity Employer



# NAUGATUCK TREATMENT COMPANY

500 CHERRY STREET
NAUGATUCK, CONNECTICUT 06770
TELEPHONE (203) 723-1433
FAX (203) 723-8539

SEP 11 PAID
1991

September 10, 1991

Mr. David McKeegan
State of CT. Solid Waste
165 Capitol Avenue
Hartford, CT. 06106

Dear David:

The Naugatuck Treatment Company is currently in need of disposing
of up to 15,000 cubic yards per year of incinerated sludge ash.
The Town of Litchfield has requested that we provide them with
approximately 10,000 yards for part of the final cover for their
landfill.

Your written approval for the Litchfield landfill is requested.
I have attached a copy of recent testing of our ash and a check
in the amount of $100.00 for the permit fee.

Sincerely,

Douglas A. Ritchie
Plant Manager