UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------------------

| | | |
|---|---|---|
| TIMOTHY P. DOYLE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:02 CV 656 (JCH) |
| TOWN OF LITCHFIELD, et al. | : | |
| | : | |
| Defendants. | : | NOVEMBER 15, 2004 |

----------------------------------------------------------------

## TOWN OF LITCHFIELD'S MEMORANDUM
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I.     INTRODUCTION

This action by plaintiff Timothy Doyle ("Doyle") against the defendant Town of

Litchfield ("Litchfield") represents an attempt by plaintiff Doyle to relitigate claims and

issues that previously were fully litigated between the same parties in the Connecticut

courts.  In addition to being barred by preclusionary principles and the limitation on

District Court jurisdiction under the *Rooker-Feldman* doctrine, Doyle's claims in this action

also must be dismissed because Doyle is without standing to assert the claims, he failed to

comply with mandatory statutory requirements, and he failed to plead cognizable claims.

In *Lisa I. DiJon and Timothy P. Doyle v. Town of Litchfield*, filed in the Superior

Court for the Judicial District of Litchfield, Doyle pursued numerous common law and

statutory legal theories based upon his central allegation that leachate from the former

Litchfield landfill site had contaminated Doyle's property with toxic or hazardous

substances.  Doyle sought recovery of environmental "response costs" and various other

damages, as well as injunctive relief.  After a full trial, Judge Stephen Frazzini entered a

judgment against Doyle and in favor of Litchfield on all counts.  The court's memorandum

of decision comprehensively reviewed the expert testimony and determined that Doyle had

failed to prove *either* that his property was contaminated *or* that any such alleged

contamination could have reached his property from the former landfill, approximately

one-quarter mile away.  Doyle's post-trial motions and subsequent appeal were

unsuccessful.

Hoping to keep his claims alive, Doyle turned to this Court.  But by that time,

Doyle no longer had any interest in the Litchfield property that had been the subject of his

state court action.  In 2000, at about the time when *DiJon v. Litchfield* was being tried in

the state court, Doyle had lost the property to foreclosure.  Doyle had then moved away.

He has resided in the Town of Woodbury since before he filed the present action in 2002.

Doyle's claims against Litchfield in this Court are essentially based upon the same

allegations that Doyle raised in the state court action several years ago.  Doyle once again

claims that hazardous substances from the landfill contaminated his former property,

causing him to incur response costs, damages and losses.  He also repeats his earlier claim

that, when the landfill was closed in the early 1990s, Litchfield had accepted a quantity of incinerated sludge ash containing hazardous wastes from Naugatuck Treatment Company for use as part of the landfill cover material.  Although Doyle's claim concerning the ash was never reached by the state court (because the court's findings made the issue moot), there is no doubt that Doyle asserted the claim.

In his Second Amended Complaint filed in this Court on September 24, 2004, Doyle seeks to pursue claims against the Town for CERCLA cost recovery, RCRA citizen suit, state statutory cost recovery, strict liability, negligence per se.  Litchfield respectfully submits that the Court lacks jurisdiction to entertain these claims and that all of the claims are barred or fail as a matter of law.

## II.    FACTS

### A.    Background

The background facts are well summarized by Judge Frazzini in his Memorandum of Decision in *DiJon v. Doyle* dated January 8, 2001.  See Ex. F at 2-5.  For fifty years, Litchfield operated a municipal landfill off of Little Pitch Road in the Town of Litchfield. The landfill was closed in the early 1990s in response to a DEP order.  Litchfield's DEP-approved landfill closure plan included the installation of wells and the other steps to monitor groundwater and surface water surrounding the landfill.  "Part of the closure plan

involved placing a covering material composed of soil and ash derived from incinerated sludge on top of the landfill...."  Ex. H at 4.  DEP specifically approved the use of incinerated sludge ash for the cover material.  <u>See</u> Second Amended Complaint (Sept. 24, 2004) ¶ 32 (and its attached Ex.C).

In 1996, Lisa DiJon, who was at that time the fiancée of plaintiff Timothy Doyle, purchased real property at 521 South Plains Road, Litchfield, Connecticut ("the Property").  Ex. F at 2.[1]  The Property was located approximately one-quarter mile northwest of the former landfill site.  <u>See</u> Ex. F at 3.  During 1996, Doyle came to believe that the Property had been contaminated by leachate migrating from the landfill.  <u>Id.</u>  In 1997, Doyle and his then spouse, DiJon, filed an action against Litchfield in the Superior Court of Connecticut, Judicial District of Litchfield, <i>Lisa I. DiJon and Timothy P. Doyle v. Town of Litchfield</i>, Docket No. CV-97-0074982-S, asserting claims based upon the alleged contamination of the Property.  <u>See</u> Ex. A, Complaint (Sept. 24, 1997).

By the time the litigation in the state court reached trial, Doyle had lost the Property in unrelated foreclosure proceedings.  <u>See</u> Ex. F at 2 n.1; <u>see also</u> Amended Complaint (in this action) (May 22, 2002) at ¶¶ 2, 14.  Doyle subsequently moved away.  Since some time before he filed the present action in this Court in April 2002, Doyle has lived in the

---

[1]     In February 1998, after the state court litigation was filed, DiJon conveyed an interest in the Property to Doyle.  Ex. F at 3 n.3; <u>see</u> Ex. E, Third Amended Complaint (Apr. 21, 2000) at ¶ 2.

Town of Woodbury.  See Civil Rights Complaint (in this action) (Apr. 11, 2002); see also

Second Amended Complaint (Sep. 24, 2004) at ¶ 3.

      B.      The Litigation

          1.      State Court Proceedings

In their initial complaint, Doyle and DiJon claimed that the contamination from

Litchfield's former landfill had caused them to sustain various injuries, including

diminution or destruction of the value of the Property, economic loss due to frustration of

their plans to use the Property for a horse breeding enterprise, and expenditures for

environmental testing and remediation.  They sought injunctive relief, compensatory

damages, exemplary or punitive damages, and treble damages. Ex. A at 7.

During the pendency of the state court action, attorneys for Doyle and DiJon

amended their complaint several times (see generally Exs. B - E), advancing a variety of

theories of liability against Litchfield, including private nuisance, public nuisance, absolute

nuisance, willful and reckless conduct, negligence, negligence per se, cost recovery under

state statute, trespass, strict liability for ultrahazardous activity, hazardous waste disposal,

violations of state and federal statutes, stigma, and constitutional taking.  The pleadings

specifically asserted claims for environmental cost recovery under Conn. Gen. Stat.

§ 22a-452 (e.g., Ex. B, Amendment to Complaint (Oct. 29, 1997) at ¶ 10 et seq.), strict

liability (e.g., Ex. E, Third Amended Complaint (Apr. 21, 2000) at ¶ 61 et seq.), and

negligence per se based upon statutory violations (e.g., Ex. E at ¶ 42 et seq.; cf. Ex. D,

Second Amended Complaint (May 1, 1998) at ¶ 22 et seq.).  The statutes that Litchfield

was alleged to have violated included "42 USC Section 9601 et sec [sic] (Comprehensive

Environment Response Compensation & Liability Act of 1980 CERCLA)" and "Federal

Resource Conservation & Recovery Act 42 USC 6901 et sec [sic] (RCRA)."  Ex. D,

Second Amended Complaint (May 1, 1998) at ¶ 22e.

     In addition to claiming that the flow of leachate from the landfill had contaminated

the Property, the plaintiffs claimed that Litchfield's closure of its landfill had been handled

improperly.  Specifically, Doyle and DiJon alleged that Litchfield had improperly used

"approximately 10,000 cubic yards of incinerated sludge ash from the Naugatuck,

Connecticut landfill as part of cover material," although Litchfield knew or should have

known that "such sludge ash contained toxic metals which would leach pollutants into

ground and surface waters," and that Litchfield had "failed to properly analyze or test the

incinerated sludge ash from Naugatuck, Connecticut."  Ex. B, Amendment to Complaint

(Oct. 29, 1997) at ¶ 24d, 24e.  During the course of the suit, plaintiffs' demands for relief

were expanded beyond the intial claims for injunction and damages to include

reimbursement of environmental costs (containment, removal or mitigation), compensation

for inverse condemnation, damages for mental and emotional distress and declaratory judgment.[2]

Trial of the state court action took place before Judge Frazzini during May, June, and July 2000 and included fifteen days of testimony with expert witnesses on both sides, two site visits, and various motion hearings. The parties submitted extensive post-trial briefs, and the court heard closing arguments in September 2000. On January 8, 2001, the court issued a 33-page memorandum of decision, rendering judgment for the defendants in each of the three cases. Judge Frazzini found that plaintiffs failed to prove that the Property contained elevated levels of claimed contaminants, and also failed to prove that the former landfill could have been be the source of any claimed contamination of the Property. See Ex. F. Plaintiff's counsel filed a motion for reargument. After conducting a hearing, the court issued a memorandum on October 10, 2001, denying the motion for reargument. See Ex. H.

Acting *pro se*, Doyle filed appeals from the judgments in each of these cases. DiJon v. Town of Litchfield, No. AC 22479; Doyle v. Hugh Webster, No. AC 22480;

---

[2]        In 1998 and 1999, Doyle and DiJon filed additional suits, based upon the same claims of contamination, naming as defendants the previous owners of the property at 521 South Plains Road and also the real estate broker and agent who had been involved in DiJon's purchase of the property. The other two cases were: *Lisa M. Doyle [sic] and Timothy P. Doyle v. Hugh Webster, et al.*, Superior Court, Judicial District of Litchfield, No. CV 98-0076407 S; and *Timothy P. Doyle and Lisa DiJon v. Arthur Webster, et al.*, Superior Court, Judicial District of Litchfield, No. CV 99-0079961 S. These cases eventually were tried together with *DiJon v. Litchfield*.

Doyle v. Arthur Webster, No. AC 22481.  The Connecticut Appellate Court dismissed each of the appeals in January 2002.  Doyle filed motions for review or reconsideration, which were dismissed by the Appellate Court in March 2002.  In May 2002, the Connecticut Supreme Court denied Doyle's motion for transfer and dismissed Doyle's motion for further appellate review, concluding the litigation in the state courts.  See Exs. J through L.

2.    Federal Court Litigation

At the same time that Doyle was in the last stages of exhausting his options in state court, he turned to the federal court.  In a complaint dated April 8, 2002, plaintiff, acting *pro se*, sued Litchfield again, once alleging that the property at 521 South Plains Road had been damaged by leachate contamination from Litchfield's former landfill.  Plaintiff's initial complaint in this Court consisted of claims that Litchfield had violated the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution by allegedly taking his property and using it as a "leaching field" for the Landfill.

In an amended complaint dated May 22, 2002, plaintiff, still acting *pro se*, asserted a claim under 42 U.S.C. § 1983, repeating his allegations that Litchfield violated the Fourth, Fifth and Fourteenth Amendments when it "used the plaintiff's property as a leaching field for contaminated runoff from the former town landfill."  Complaint dated May 22, 2002, ¶¶ 16-17.  Plaintiff further alleged that Litchfield's purported failure to

provide him with "notice of the hazardous environmental conditions affecting the property" denied him equal protection under the Fourteenth Amendment.  Id. at ¶ 20.  Plaintiff asserted a claim for recovery of unspecified response costs he allegedly incurred due to the disposal of "hazardous waste" under 42 U.S.C. § 9607(a).  Id. at ¶ 25.  Plaintiff also claimed common law nuisance and trespass, as well as stigma damage, styled as a "toxic tort class action."  See id. at Third through Fifth Causes of Action.

In January 2003, the court granted plaintiff's application for appointment of pro bono counsel.  On July 10, 2003, plaintiff filed a motion to amend his complaint and to add as defendants Crompton Corporation ("Crompton"), Uniroyal Chemical Company, Inc. ("Uniroyal"), and Naugatuck Treatment Company ("NTC").  Crompton objected to plaintiff's motion.  After conducting a hearing, Judge Goettel denied the Motion.  See *Ruling on Motion for Leave to Amend Complaint* (Oct. 22, 2003).  After Doyle's motion for reconsideration was denied, Doyle filed a notice of appeal to the Second Circuit Court of appeals in January 2004.  Crompton moved to dismiss the appeal.  In June 2004, before Crompton's motion was heard, Doyle's appeal was withdrawn, pursuant to a written stipulation approved by the Court of Appeals.  The stipulation stated that the appeal was "premature because some claims [were] still pending in District Court, i.e., plaintiff's claims vs. Town of Litchfield."

On September 24, 2004, Doyle filed a Second Amended Complaint ("Complaint") directed to Litchfield. The complaint seeks to pursue causes of action designated as CERCLA (Count One), RCRA (Count Two), Conn. Gen. Stat. § 22a-452 (Count Three), strict liability (Count Four), and negligence per se (Count Five). As in the prior litigation, Doyle seeks recovery of alleged environmental costs, damages,[3] and injunctive relief. Although all counts of the current Complaint are directed to Litchfield, the Complaint is virtually identical to the pleading that Doyle had unsuccessfully sought permission to file in 2003, containing the same allegations regarding Crompton and its subsidiaries.

The Complaint fails to allege that Doyle furnished any pre-suit notice to any federal or state agency or to the defendant. Unlike the previous *pro se* pleadings, the current Complaint conspicuously omits any reference to the prior state court litigation and judgment.

Litchfield respectfully moves that this Court put an end to this redundant litigation and enter judgment in its favor.[4]

---

[3]    Although Count Two contains an allegation that "plaintiff has been damaged" (Complaint at ¶ 52), it is clear that Doyle cannot recover damages or response costs under RCRA. See Meghrig v. KFC Western, Inc., 516 U.S. 479, 484 (1996).

[4]    In a September 13, 2004 telephonic status conference, the Court approved an agreement between the parties that there shall be no discovery in this case pending a ruling on Litchfield's motion for summary judgment.

III.    <u>ARGUMENT</u>

Summary judgment should be granted when, as here, "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. The requirement is that there be no *genuine* issue of *material* fact." <u>DeRossi v. National Loss Mgmt.</u>, 328 F. Supp. 2d 283, 287 (D. Conn. 2004) (Hall, J.) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original)).

This Court should enter summary judgment in favor of Litchfield because the Court lacks jurisdiction to consider plaintiff's claims. Specifically, the *Rooker-Feldman* doctrine bars this Court from considering plaintiff's claims, which depend upon factual and legal issues considered and ruled upon by the state court. This Court also lacks jurisdiction because plaintiff lacks standing to seek the relief he requests.

Even if this Court finds that it has jurisdiction over plaintiff's claims, Litchfield is entitled to judgment in its favor because: (1) in Doyle I plaintiff litigated and/or could have litigated all of the claims and issues he alleges presently; (2) the issues dispositive of this action were previously litigated in Doyle I and plaintiff is bound by those determinations; (3) it is the law of the case that plaintiff's claims are barred by collateral estoppel; and (4)

plaintiff's "strict liability," Conn. Gen. Stat. § 22a-452 and RCRA claims otherwise fail as a matter of law.

      A.    <u>This Court Lacks Jurisdiction Over Plaintiff's Claims and Plaintiff's Claims Are Precluded as a Matter of Law.</u>

This Court must give the state court's judgment the same effect that a Connecticut court applying Connecticut preclusion law would give this judgment.  <u>See</u> <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 81 (1984); <u>see also</u> <u>Centra Mortgage Holdings, Inc. v. Mannix</u>, 18 F. Supp. 2d 162, 164 (D. Conn. 1998) (Hall, J.); <u>see also</u> 28 U.S.C. § 1738.  In this action, plaintiff sues Litchfield on the same essential claims that he first raised when he sued Litchfield in 1997.  The state court considered these claims in Doyle I and rendered judgment in favor of Litchfield.  This Court should therefore grant Litchfield's motion for summary judgment because, pursuant to the *Rooker-Feldman* doctrine, the Court lacks jurisdiction over these claims.  This Court may also grant summary judgment in favor of Litchfield because plaintiff's claims are barred under Connecticut law by the doctrines of res judicata and collateral estoppel.

      1.    <u>Pursuant to the *Rooker-Feldman* doctrine, this Court lacks jurisdiction over plaintiff's claims.</u>

Plaintiff's repeat action against Litchfield asks this Court to do what it has no constitutional authority to do – sit in review of a state court decision.   "Under the Rooker-Feldman doctrine, lower federal courts lack jurisdiction over claims that effectively

challenge state court judgments." Kropelnicki v. Siegel, 290 F.3d 118, 128-29 (2d Cir. 2002), citing, D.C. Court of Appeals v. Feldman, 460 U.S. 462, 486-87 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923); see also Estate of Judith Murphy v. Area Coop. Educ. Servs., 127 F. Supp. 2d 297, 302 (D. Conn. 2000) (Hall, J.) (granting summary judgment to defendant, held *Rooker-Feldman* doctrine barred court from exercising jurisdiction over plaintiff's Section 1983 claim where Connecticut state and appellate courts previously decided plaintiff had been afforded due process in termination).

 "In addition to claims that were *actually* litigated in state court, the Rooker-Feldman doctrine bars lower federal courts from exercising jurisdiction over claims that are *'inextricably intertwined'* with state court determinations." Kropelnicki, 290 F.3d at 128 (quoting Feldman, 460 U.S. at 482-83 n.16 (internal question marks omitted; emphasis added) (held district court lacked jurisdiction to consider plaintiff's claim under Federal Debt Collection Practices Act where claim was "inextricably intertwined with the state court default judgment").  A claim is "inextricably intertwined" under *Rooker-Feldman* when "at a minimum . . . a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), . . . [and] the claim . . . would be barred under the principles of preclusion." Estate of Murphy, 127 F. Supp. 2d at 302, quoting Moccio v. N.Y. State Office of Court Admin., 95 F.3d 195, 199-200 (2d Cir. 1996) (internal question marks omitted); see also Vargas v. City of New York, 377 F.3d

200, 205 (2d Cir. 2004) (same); Dolan v. Roth, 325 F. Supp. 2d 122, 132 (N.D.N.Y.

2004) (same).  As set forth below, Connecticut preclusion principles operate to bar Doyle's

action.

a.    Res judicata bars plaintiff's claims.

Plaintiff attempts to again litigate claims based upon the allegations that Litchfield's

former Landfill site caused contamination of the Property and various losses, including

alleged "response costs."  This same group of facts were fully litigated in the state court,

and plaintiff was unsuccessful.  This Court should reject the invitation to allow plaintiff to

start over again.

As the United States Supreme Court has recognized:

> The doctrine of res judicata serves vital public interests
> beyond any individual judge's ad hoc determination of the
> equities in a particular case. . . . [Public] policy dictates that
> there be an end of litigation; that those who have contested an
> issue shall be bound by the result of the contest, and that
> matters once tried shall be considered forever settled as
> between the parties. . . . [R]es judicata is not a mere matter
> of practice or procedure inherited from a more technical time
> . . . .  *It is a rule of fundamental and substantial justice, of
> public policy and of private peace*, which should be cordially
> regarded and enforced by the courts.

Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 401 (1981) (emphasis added;

internal citations and quotation marks omitted) (no public policy exception to res judicata).

Connecticut rules of res judicata similarly are based on the public policy that "a party

should not be able to relitigate a matter which it already has had an opportunity to litigate."

Dunham v. Dunham, 221 Conn. 384, 391 (1992).

It is well settled in Connecticut that "[u]nder the doctrine of res judicata, or claim

preclusion, a former judgment on a claim, if rendered on the merits, is an *absolute bar* to a

subsequent action on the same claim." Joe's Pizza, Inc. v. Aetna Life & Cas. Co., 236

Conn. 863, 871-72 (1996), quoting DeMilo & Co. v. Commissioner of Motor Vehicles,

233 Conn. 281, 292 (1995) (emphasis added; internal quotation marks omitted). "A

judgment is final not only as to every matter which was offered to sustain the claim, but

also as to any other admissible matter which *might have been offered* for that purpose . . .

The doctrine of res judicata, therefore, applies not only to claims actually made and

litigated . . . but also to claims that a party *could have made* in the initial action." DeMilo,

233 Conn. at 292-93 (emphasis in original; internal citation omitted), citing Restatement

(Second) of Judgments § 27 ("Restatement").

In determining whether a subsequent claim is barred by res judicata, Connecticut

courts apply the "transactional test" set forth in Section 24 of the Restatement. See, e.g.,

DeMilo, 233 Conn. at 294. Under this test, whether a claim is barred is primarily a

factual, rather than legal, inquiry:

> The claim [that is] extinguished [by the judgment in the first
> action] includes *all rights of the plaintiff to remedies against the*
> *defendant with respect to all or any part of the transaction, or*
> *series of connected transactions, out of which the action arose.*

> What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Id. (alternations in the original; internal citations and quotations omitted; emphasis added).

The focus in the res judicata inquiry is not upon the labels but is upon the facts. See, e.g., Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077-78 (9th Cir. 2003) ("imaginative attorney may [not] avoid preclusion by attaching a different legal label to an issue that has, or could have, been litigated."); Aliff v. Joy Mfg. Co., 914 F.2d 39, 43-44 (4th Cir. 1990) (res judicata barred claim for response costs under CERCLA where plaintiff sued defendant seller in prior action for false representation in conveying building; CERCLA claim could have been brought in first action "because it ar[ose] from same factual basis, namely the contaminated building."). Courts apply res judicata's bar to claims raised in a second action whenever the underlying facts are essentially the same as those raised in the first action -- regardless of whether the first action was brought in state court under state law and the second in federal court under federal law. See, e.g., Lane v. Peterson, 899 F.2d 737, 744 (8th Cir. 1990) (Restatement Second "prevents parties from suing on a claim that is in essence the same as a previously litigated claim but is dressed up to look different"; federal law claims of securities fraud

and bankruptcy fraud, RICO, and breach of fiduciary duties were barred where plaintiffs

previously sued defendants for breach of fiduciary duties under state law).

Here, when Doyle sued Litchfield in the state court, "[t]he gravamen of the

plaintiffs' various causes of action against [Litchfield] [was] their allegation that testing of

soil, surface water, and ground water on their property show[ed] the presence of leachate

containing toxic and hazardous substances emanating from the former landfill." Decision,

at *2. Ex. I. Compare, Doyle's allegations in the current federal complaint that his

property "was contaminated by leachate from the landfill" and that the defendants'

activities caused Doyle's property to be "polluted and rendered useless and without value .

. ." Complaint, ¶¶ 2, 41. Indeed, in the current Complaint, plaintiff quotes, virtually

verbatim, the state court's "Preliminary Findings of Fact." Compare Complaint, ¶¶ 10-12;

18-25 with Decision, at **3-8. See Ex. I.

Plaintiff also continues to argue in this Court his theory that the purported

contamination resulted from Litchfield's improper closure of the Landfill. See, e.g.,

Complaint, ¶ 23 (Town covered Landfill with "material composed of soil and ash derived

from incinerated sludge on the top of the landfill to reduce the amount of rain and surface

water entering the Landfill. Upon information and belief, hazardous substances are

contained within this covering material."). Plaintiff alleged essentially this same claim

over seven years ago. See Amendment to Complaint dated October 29, 1997, Fourth

Count, ¶¶ 7-8, 24(d) ("In 1992, the Defendant used approximately ten thousand (10,000) cubic yards of incinerated sludge ash from Naugatuck, Connecticut as part of its final cover material" and "knew, or should have known, that such sludge ash contained toxic metals which would leach pollutants into ground surface waters."). See Ex. B.

Simply put, plaintiff's claims in this Court include claims that he either did raise and/or undisputedly *could* have raised and fully litigated, in Doyle I. Accordingly, res judicata bars Courts One, Three, Four and Five of plaintiff's Complaint. E.g., Commissioner v. Connecticut Bldg Wrecking, Co., 227 Conn. 175, 190 (1993) (held res judicata barred second action where prior action and present action '[b]oth focus[ed] on the operation of a solid water facility at the Bridgeport site and the collateral environmental consequences of that operation."); see also Davis v. Sun Oil Co., 148 F.3d 606, 613 (6th Cir. 1998), cert. denied, 525 U.S. 1018 (1998) (affirming district court's grant of summary judgment to defendant on basis that res judicata barred plaintiff's RCRA claims where plaintiffs previously sued defendant in state court regarding the same alleged contamination).

b.    Collateral estoppel also bars plaintiff's action.

The state court determined certain essential issues that are also dispositive of Doyle's claims before this Court – i.e., whether the Property was contaminated and whether any such contamination could be the result of substances emanating from the

Landfill.  Because Doyle is bound by the state court's determinations on those key issues,

his claims in this court are barred by collateral estoppel.

The Connecticut Supreme Court recently set forth the "fundamental" and "well

established" principles of collateral estoppel:

> The common-law doctrine of collateral estoppel, or issue
> preclusion, embodies a judicial policy in favor of judicial
> economy, the stability of former judgments and finality. . . .
> Collateral estoppel means simply that when an issue of
> ultimate fact has once been determined by a valid and final
> judgment, that issue cannot again be litigated. . . [C]ollateral
> estoppel precludes a party from relitigating issues and facts
> actually and necessarily determined in an earlier proceeding .
> . . An issue is actually litigated if it is properly raised in the
> pleadings or otherwise, submitted for determination, and in
> fact determined. . . . An issue is necessarily determined if, in
> the absence of a determination of the issue, the judgment
> could not have been validly rendered.

DaCruz v. State Farm Fire & Cas. Co., 268 Conn. 675, 686 (2004) (internal citation and

quotation marks omitted) (trial court's judgment declaring that insurer was not obligated to

defend insured necessarily determined that insured had no duty to indemnify and therefore

barred relitigation of indemnification issue); accord Liberty Mut. Ins. Co.  v. FAG

Bearings Corp., 335 F.3d 752, 760 (8th Cir. 2003) (held issue of the source of groundwater

contamination at defendant's factory was actually litigated and necessarily decided in prior

action and could not be relitigated); Lafleur v. Whitman, 300 F.3d 256, 275 (2d Cir. 1999)

(collateral estoppel barred federal action alleging that EPA Administrator improperly failed

to object to state agency's issuance of permit where state court considered whether state agency properly should have issued Clean Air permit).

Where an issue decided by a state court under state law is dispositive to a claim subsequently asserted under a federal statute, collateral estoppel bars the federal statutory claim -- even if the federal statutory claim could *not* have been raised in the prior state court action.  For example, in Kremer v. Chemical Constr. Co., 456 U.S. 461 (1982), where the state court previously upheld an administrative agency's finding of nondiscrimination under New York law, the United State Supreme Court affirmed the Second Circuit Court of Appeals judgment that plaintiff was collaterally estopped from bringing action under Title VII in federal court on basis of same alleged discrimination. Id. at 485.  Likewise, in Murphy v. Gallagher, 761 F.2d 878 (2d Cir. 1985), the court affirmed the district court's dismissal of plaintiffs' Securities and Exchange Act and SEC Rule 10b-5 action where plaintiffs previously had brought a shareholder dissolution action in state court and the state court had concluded that the evidence did not establish any illegal or fraudulent actions by those in control of the corporation.  The Second Circuit affirmed the district court's dismissal on the basis that collateral estoppel and the full faith and credit clause required the federal court to give the state court's determination preclusive effect.  Id. at 884-86.

A review of plaintiff's Complaint shows that he continues to focus on the same issues litigated in the state court – i.e., whether the Landfill released hazardous substances that contaminated the Property.  See, e.g., Complaint, ¶ 2 ("Plaintiff purchased property in Litchfield . . . that was contaminated by leachate from the landfill"); ¶ 45 ("[h]azardous substances, contaminants, and pollutants were released from the landfill"); ¶ 46 ("[p]laintiff has incurred response costs as a result of the aforementioned release"); ¶ 55 ("Town is liable to plaintiff for his costs incurred in containing, remedying and/or mitigating the effects of contamination to the Property from the hazardous substances in the [landfill's cover]").  Because plaintiff and Litchfield actually litigated these same issues in Doyle I, and Litchfield fully prevailed, collateral estoppel bars plaintiff's present claims.

Among other relevant findings, in Doyle I, the court ruled that: 1) plaintiffs "failed to meet their burden of proof to establish the existence of a pathway for leachate to migrate from the landfill to the plaintiffs' property" (Decision, at *18); 2) "plaintiffs did not sustain their burden of proof of establishing that there were elevated levels of contaminated substances in the soil of the Doyle property in comparison with applicable and appropriate standards" (id. at *31); 3) "plaintiffs did not bear their burden of establishing, by a preponderance of proof, that the surface or ground water on the Doyle property contained elevated levels of constituents exceeding recognized and applicable standards" (id. at *45); 4) plaintiffs "fail[ed] to preclude the possibility that the results found on the Doyle property

were naturally occurring levels" (id. at *49); and 5) "[t]he evidence presented to the court did not establish, by a fair preponderance, *that either one molecule or elevated levels of landfill constituents were on the plaintiff's property*." Id. at *54 (emphasis added).

The state court's findings that the Property was not contaminated and that the Landfill could not be the source of any such contamination were essential to the court's judgment. See Decision, at *8 ("There appears to be no dispute among the parties that such a finding [that toxic constituents hazardous to human health had flowed as leachate from the landfill to the Property] would be a basis for liability, at least as to Litchfield."). Accordingly, as the Town and plaintiff "actually" and "necessarily" litigated whether the Property was contaminated or even could have been contaminated by the Landfill, plaintiff is collaterally estopped from raising these issues again in this Court. See, e.g., DaCruz, 268 Conn. at 686; Aetna Cas. and Sur. Co. v. Jones, 220 Conn. 285, 297-99 (1991) (collateral estoppel applies when party attempts to relitigate facts in second proceeding that necessarily were determined in first proceeding).

In Wilder v. Thomas, 854 F.2d 605 (2d Cir. 1988), the Second Circuit applied collateral estoppel principles to affirm the dismissal of a citizens' suit brought pursuant to the Clean Air Act. The state court had denied and rejected plaintiffs' claims, based on state environmental statutes, challenging the New York State Urban Development Corporation's approval of a construction project. After the subsequent federal action was

dismissed, the Second Circuit held that the issue of the adequacy of defendant's mitigation

measures was "determined and necessary to the judgment" of the state court and that

plaintiffs "had a full and fair opportunity to litigate the issue in state court." Id. at 617-21.

The Wilder court observed, in language that would also seem appropriate for this

case:

> . . . the differences in applicable law are a matter of form
> rather than substance, and plaintiff[ ] [was] not only in the
> best position to foresee the possibility of future litigation, [he]
> [was] [in all likelihood] actually prepared with the complaint
> in this case and filed it immediately after [he] lost the state
> action. . . .
>
> Simply because application of collateral estoppel in this
> federal action to an issue decided in state court might deprive
> plaintiff[ ] of the opportunity to litigate here a claim that is
> based, in part, on federal law does not, of itself, render the
> doctrine inapplicable.

Id. at 620.

Indeed, as Judge Goettel has already ruled in this case: "the fact that the state court

found that plaintiff did not sustain his burden of proof that the property was contaminated is

dispositive" for the purposes of barring plaintiff's claims in this Court. See Ruling on

Motion for Leave to Amend Complaint, dated October 22, 2003. Judge Goettel's ruling is

the law of the case. See, e.g., Pitney Bowes, Inc. v. Hewlett-Packard Co., 141 F. Supp.

2d 288, 299 (D. Conn. 2001) (Hall, J.) ("law of the case doctrine was judicially created to

ensure judicial efficiency and to prevent the possibility of endless litigation"; doctrine

"applies not only to issues discussed and decided but also those decided by necessary implication"); see also Remington Prods. Inc. v. North Am. Phillips Corp., 755 F. Supp. 52, 54 (D. Conn. 1991) (Zampano, J.) ("under the law of the case doctrine, a decision made at one state of the case become binding precedent to be followed during the rest of the litigation.").

As this discussion demonstrates, because settled Connecticut preclusion principles would bar Doyle's claims, this Court lacks jurisdiction to hear this action under the *Rooker-Feldman* doctrine.  E.g., Kropelnicki, 290 F.3d at 129; Moccio, 95 F.3d at 201 (district court lacked jurisdiction to consider plaintiff's § 1983 equal protection claim because to do so would require district court to consider "precise issue" on which state court's decision rested); Estate of Judith Murphy, 127 F. Supp. 2d at 302; accord Gyadu v. Hartford Ins. Co., 283 F. Supp. 2d 740, 746 & n.3 (D. Conn. 2003) (Hall, J.) (considering res judicata first and dismissing on that ground, this Court noted *Rooker-Feldman* also would bar Court from considering claims).   This Court therefore should enter judgment dismissing the action for lack of jurisdiction, or, in the alternative, the Court should enter judgment on the grounds of res judicata and collateral estoppel.

B.      Plaintiff Lacks Standing to Bring this Action.

"The issue of standing implicates constitutional limitations on federal court jurisdiction."  Christensen v. Chesebrough-Pond's, Inc., 862 F. Supp. 22, 23 (D. Conn.

1994).  "The plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Student Members of Same v. Rumsfeld, 321 F. Supp. 2d 388 (D. Conn. 2004) (Hall, J.).  As this is a burden plaintiff cannot meet, this Court lacks jurisdiction over this action and should enter judgment in favor of Litchfield

In order to have standing, a plaintiff must have suffered an "injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) *actual or imminent*, not conjectural or hypothetical. . ." Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) (emphasis added; internal quotation marks and citations omitted). "[T]he injury complained of must be fairly traceable to the challenged action of the defendant, and not . . . the result of some third party not before the court." Id. at 559 (citation omitted).  Further, "[p]ast exposure to illegal conduct does not in itself show *present* case or controversy regarding injunctive relief . . . if unaccompanied by any *continuing adverse* effects." Id. at 552 (emphasis added).  In other words, "[i]n order to have standing to sue, *even under an environmental statute*, a plaintiff must be either faced with a harm or threatened harm." G.J. Leasing v. Union Elec., 839 F. Supp. 21, 22 (S.D. Ill. 1993) (emphasis added).  Finally, "it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 561 (internal quotation marks omitted).

In Doyle I, the state court concluded that Doyle's property had in fact not suffered environmental harm or damage. The court further found that Doyle failed to prove that his properly <u>could</u> have been damaged by the Landfill. Those findings, which are binding upon Doyle, deprive him of any standing to assert similar claims in this action.

Moreover, it is undisputed that Doyle lost title to the Property in May 2000 as a result of foreclosure. Thereafter, Doyle moved away. Since at least April 2002, Doyle has resided in Woodbury.[5] Doyle therefore has no standing to bring this action. He is neither an aggrieved landowner under state law or CERCLA nor is he a citizen with sufficient interest to invoke RCRA.

This Court therefore lacks jurisdiction over this action and Litchfield's motion for summary judgment should be granted. <u>See, e.g.,</u> <u>Egri v. Connecticut Yankee Atomic Power Co.</u>, 270 F. Supp. 2d 285, 291-92 (D. Conn. 2002) (Nevas, J.) (granting summary judgment where plaintiffs lacked standing to seek injunction barring defendant from building storage site for radioactive waste and fuel because plaintiffs did not own property in immediate proximity of defendant and failed to articulate requisite "concrete and particular injury" (quoting <u>Lujan</u>, 504 U.S. at 561)); <u>Calabrese v. McHugh</u>, 170 F. Supp. 2d 243, 260 (D. Conn. 2001) (Goettel, J.) (granting summary judgment where plaintiff

---

[5]    Beginning with his April 2002 complaint, plaintiff alleges that he resides in Woodbury, Connecticut. In plaintiff's October 31, 2003 Reconsideration Memorandum, plaintiff represented that he moved from the Property "in 2001." Reconsideration Memorandum, p. 5.

lacked standing to bring state-law tort claims for remediation costs allegedly resulting from

contamination because claims accrued prior to plaintiff's filing his bankruptcy petition and

claims therefore belonged to estate); Wademan v. Concra, 13 F. Supp. 2d 295, 304

(N.D.N.Y. 1998) (dismissing RCRA claim where plaintiffs "[were] no longer associated

with the [allegedly contaminated] building . . .[and] "any remedial action ordered by the

Court would [thus] not effect or assist the plaintiffs."); Pape v. Lake States Wood

Preserving, Inc., 948 F. Supp. 697, 699-700 (W.D. Mich. 1995) (granting motion to

dismiss citizens' suit pursuant to RCRA where plaintiff lived approximately 150 miles

away from purportedly contaminated property and plaintiff's complaint failed to show

requisite "imminent injury"); G.J. Leasing, 839 F. Supp. at 22 (dismissing RCRA action

where "plaintiffs no longer ha[d] any current harm or threat of harm facing them from the

state."); accord Foster v. United States, 922 F. Supp. 642, 661 (D.C. Cir. 1996) (granting

summary judgment to defendant on RCRA claim where defendant failed to establish that

Site presented "imminent and substantial endangerment to health or environment" as is

necessary to maintain RCRA citizens' suit).

      C.    Plaintiff's RCRA claim fails for several additional reasons.

     Plaintiff's failure to comply with RCRA's mandatory notice requirements also

deprives this Court of jurisdiction to consider his RCRA claim.  In language that the United

States Supreme Court has declared mandatory, 42 U.S.C. § 6972 provides that no action

under either "subsection (a)(1)(A)" or "subsection (a)(1)(B)" (RCRA's citizens suit

provisions, which plaintiff purports to sue upon here, see Complaint, ¶¶ 48-52) may be

commenced until after plaintiff has given notice to "the Administrator [of the

Environmental Protection Agency]"; "the State in which the alleged endangerment may

occur"; and the persons that allegedly violated a "permit, standard, regulation . .. or

order," and/or "contributed or to be contributing to the past or present handling, storage . .

. or disposal" of waste.  See 42 U.S.C. § 6972 (b)(1)(A) and § 6972 (b)(2)(A); Hallstrom

v. Tillamook County, 493 U.S. 20, 32 (1989) (notice requirements are mandatory

conditions precedent to commencing suit under RCRA's citizen suit provisions; failure to

do so requires dismissal by district court); Walker v. TDY Holdings, LLC, 135 F. Supp.

2d 787, 790 (S.D.Tex. 2001) (same); accord  Walls v. Waste Resource Corp., 761 F.2d

311, 316-17 (6th Cir. 1985) (held court lacked jurisdiction to consider RCRA claim where

plaintiff failed to allege compliance with RCRA's mandatory notice requirement);

Chartrand v. Chrysler Corp., 785 F. Supp. 666, 670 n.4 (E.D. Mich. 1992) (same).

Furthermore, Doyle's purported RCRA claim also fails because he is pursuing his

hazardous waste claims under the wrong statutes and in the wrong court.  Congress allows

states to enact their own regulations to implement RCRA; see 42 U.S.C. § 6926; and

Connecticut has done so.  See MacDermid v. DEP, 257 Conn. 128, 132 (2001); see also

Conn. Gen. Stat. § 22a-449(c) (authorizing commissioner to establish regulations to carry

out RCRA).  Doyle is (and was) therefore limited to pursuing any claim of improper
handling of hazardous waste under Connecticut's state statutes and regulations.  <u>See, e.g.</u>,
<u>Murray v. Bath Iron Works Corp.</u>, 867 F. Supp. 33, 42 (D. Me. 1994) ("a direct action
under section 6972(a)(1)(A) is unavailable where the applicable federal requirements of
RCRA have been superseded by an EPA-authorized state hazardous waste program
pursuant to 42 U.S.C. § 6926(b)"); <u>Dague v. City of Burlington</u>, 732 F. Supp. 458, 465
(D. Vt. 1989), <u>aff'd</u>, 935 F.2d 1343 (2d Cir. 1991) ("a plaintiff seeking to challenge the
operation of a hazardous waste site in an EPA authorized state may bring an action under
state law, not federal law . . ."); <u>accord</u> <u>MacDermid</u>, 257 Conn. at 132 ("[t]he agency
generally does not enforce the federal standards in states that have authorized regulatory
programs that are no less stringent than the agency regulations.").  Presumably, Doyle's
state court counsel was aware of this limitation, since the state court complaints cited
violation of Connecticut's hazardous waste statutes.  <u>See</u> April 2000 Complaint, ¶ 20.   Ex.
E.

      D.     <u>Plaintiff Cannot Sue Litchfield under Conn. Gen. Stat. § 22a-452.</u>

      Beyond the fatal fact that Doyle already lost his purported Conn. Gen. Stat. § 22a-
452 claim in state court, his present claim under Conn. Gen. Stat. § 22a-452 fails simply
because the statute does not authorize suits against municipalities.

      The statute provides, in relevant part:

> Any person, firm, corporation or *municipality* which contains
> or removes or otherwise mitigates the effects of . . . products
> or hazardous wastes resulting from any discharge, spillage,
> uncontrolled loss, seepage or filtration of such substance or
> material or waste *shall be entitled to reimbursement from any
> person, firm or corporation* for the reasonable costs expended
> for such containment, removal, or mitigation . . .

Conn. Gen. Stat. § 22a-452 (emphasis added).  By its plain language, the Connecticut

legislature provided that municipalities may recover for costs expended in removing or

mitigating injury from hazardous wastes <u>but</u> that persons or entities that engage in such

removal or mitigation activities may <u>not</u> recover related costs from municipalities.

As Judge Hodgson noted in <u>Accashian v. City of Danbury</u>, the history of Conn.

Gen. § 22a-452 supports this view.  <u>See</u> <u>Accashian v. City of Danbury</u>, X01CV

970147228S, 1999 Conn. Super. LEXIS 36, at *30-31 (Jan. 6, 1999) (Hodgson, J.) (Ex.

M) (reviewing history of § 22a-452, court observed that because legislature amended

statute in 1986 "to specifically list municipalities as among those entities that can recover

for performing a clean-up, the General Assembly was being quite specific identifying rights

and exposures according to the identity of the entity").  Likewise, this Court should give

"effect" to  the Connecticut legislature's  "omission of 'municipalities' from the listing of

entities from which reimbursement is available"; <u>Accashian,</u> at *31; and grant judgment in

favor of Litchfield on plaintiff's claim for recovery of costs under § 22a-452 (Count

Three).

E.    Plaintiff Fails to State a Claim for Strict Liability.

Even if Doyle had not already lost in state court on his strict liability claim his present claim of strict liability fails to state a claim.

"Under Connecticut law, the court determines whether an activity is ultrahazardous as a matter of law." Martin v. Shell Oil Company, 180 F. Supp. 2d 313, 325 (D. Conn. 2002) (Hall, J.). In order to recover for strict liability under Connecticut law, a plaintiff must establish that a "defendant engaged in activity that was so dangerous it was unsafe *even with the exercise of due care*." Vaillancourt v. Town of Southington, X03CV010510816S, 2002 Conn. Super. LEXIS 1678, at *25 (May 7, 2002) (Aurigemma, J.) (Ex. M) (emphasis added). As a matter of public policy, "[s]trict liability applies *only* to activities that entail *obvious* risk of probable harm, under the theory that a defendant who chooses to engage in such obviously dangerous activity must be prepared to pay compensation for any resultant harm." Id. at *28 (emphasis added).

Accordingly, and as the Connecticut Supreme Court set forth decades ago:

> To impose liability without fault, certain factors must be present: an instrumentality capable of producing harm; circumstances and conditions in its use which, *irrespective of a lawful purpose or due care*, involve a risk of *probable* injury to such a degree that the activity fairly can be said to be intrinsically dangerous to the person or property of others; and a causal relation between the activity and the injury for which damages are claimed.

Id. at *25, citing Caporale v. C.W. Blakeslee & Sons, Inc., 149 Conn. 79, 85 (1961)

(emphasis in original); see also Accashian, 1999 Conn. Super. LEXIS 36, at *19-21 (Ex.

L) (under Connecticut law, "[a]n ultrahazardous activity for the conduct of which strict

liability for damages is imposed is one that poses danger even if due care is exercised").

     In Accashian v. City of Danbury, Judge Hodgson struck plaintiffs' claims that

"accepting hazardous and toxic substances in the Danbury landfill and discharging or

allowing the discharge of hazardous and toxic substances constituted knowingly engaging in

abnormally dangerous activity." 1999 Conn. Super. LEXIS 36, at *19.  The court found

that "storage of hazardous materials in a landfill facility under the supervision of state,

federal, and local regulatory authorities cannot logically be a reason for finding strict

liability . . ." Accashian, 1999 Conn. Super. LEXIS 36, at *19-21; accord Martin, 180 F.

Supp. 2d at 325 (underground storage of hazardous materials is not ultrahazardous activity

for purposes of "strict liability" under Connecticut law).

     Applying this settled precedent, in Vaillancourt, Judge Aurigemma granted Pratt

and Whitney's motion to strike plaintiff's claim that the handling and disposal of hazardous

substances at the Southington landfill constituted an "ultrahazardous activity for which the

defendants should be strictly liable." Id. at *24 (internal quotation marks omitted).  Judge

Aurigemma agreed with Judge Hodgson's well-reasoned analysis in Accashian that the

"operation of a landfill is not ultrahazardous because state and regulatory schemes suggest

that these [disposed] materials do not pose a hazard if handled properly." Id., quoting

Accashian, 1999 Conn. Super. LEXIS at *20-21. The court held that based upon plaintiffs'

allegations, it could not "possibl[y] conclude that any industrial user of the Southington

landfill prior to 1967 would have been engaging in an activity that *necessarily or obviously*

exposed the person of another to the danger of *probable* injury." Id. at 31 (emphasis in

original), quoting Whitman Hotel Corp. v. Elliott & Watrous, Eng'g Co., 137 Conn. 562,

565 (1951).

    Doyle's Complaint actually undercuts his claim of strict liability.  Doyle's

allegations include the fact that Litchfield took steps that reasonably could be expected to

abate the alleged pollution.  Doyle specifically alleges that the Connecticut Department of

Environmental Protection approved the disposal of the incinerated ash at the Landfill.

Complaint, ¶¶ 22, 31.  Doyle's own version of events, therefore, cannot support the

conclusion that Litchfield engaged in "an activity that *necessarily or obviously* exposed

[plaintiff ] . . . to the danger of *probable* injury." 2002 Conn. Super. LEXIS 1678, at *31

(emphasis added).  Because the claim of strict liability fails as a matter of law, this Court

should enter judgment in favor of Litchfield on Count Four.

IV.    CONCLUSION

    The Court lacks jurisdiction to consider plaintiff's claims on the basis of the

*Rooker-Feldman* doctrine and because plaintiff lacks standing.  Even if this Court had

jurisdiction, plaintiff's claims must fail as a matter of law because they are barred by the

doctrines of res judicata and collateral estoppel.  Plaintiff's purported Resource

Conservation and Recovery Act claim also is barred because plaintiff failed to satisfy

mandatory notice requirements and because a RCRA citizens suit is not available where

plaintiff is limited to a claim under Connecticut's hazardous waste statutes.  Finally,

plaintiff cannot state a claim for "strict liability" and/or for recovery of costs under

Connecticut Gen. Stat. § 22a-452.  For all of these reasons, Litchfield therefore

respectfully requests that this Court enter summary judgment in its favor.


DEFENDANT - TOWN OF LITCHFIELD


By:    /s/ George A. Dagon, Jr.
       George A. Dagon, Jr. ct06599
       Theresa M. Parietti ct23559

Murtha Cullina, LLP
CityPlace I
185 Asylum Street
Hartford, CT  06106
Telephone:  860-240-6000
Facsimile:  860-240-6150
Email:  gdagon@murthalaw.com
        tparietti@murthalaw.com
Its Attorneys

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2004, a copy of foregoing Memorandum in Support of Motion for Summary Judgment was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ George A. Dagon, Jr.
George A. Dagon, Jr.