UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| TIMOTHY P. DOYLE, | : |
|     Plaintiff, | : |
| | : |
| v. | :    CIVIL ACTION NO. |
| | :    3:02 CV 656 (JCH) |
| TOWN OF LITCHFIELD, et al. | : |
|     Defendants. | :    JANUARY 7, 2005 |

---

## TOWN OF LITCHFIELD'S REPLY MEMORANDUM
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff Timothy Doyle ("Doyle") takes the position that the CERCLA and RCRA claims he seeks to pursue in the present action are different from the claims that he unsuccessfully prosecuted for several years against this defendant, the Town of Litchfield ("Litchfield"), in the Connecticut Superior Court. But Doyle admits that the pleadings he filed during the state court litigation, which raised numerous legal theories and claims, specifically included claims for recovery of environmental response costs[1] and claims for injunctive relief[2] based on alleged leachate contamination from the Litchfield landfill. It is also quite clear that Doyle specifically invoked CERCLA and RCRA in the course of the state court litigation.[3]

---

[1]    See Plaintiff's Local Rule 56(a)(2) Statement at ¶5 (admitting ¶5 of Litchfield's Amended Local Rule 56(a)(1) Statement while purporting to object to "citations to superceded [sic] pleadings as irrelevant").

[2]    See id. at 3 (again purporting to object to "superceded [sic] pleadings").

[3]    Litchfield's Amended Local Rule 56(a)(1) Statement at ¶6 reads as follows: "In the state court action, plaintiffs alleged that Litchfield had violated numerous statutes, specifically including '42 USC Section 9601 et sec [sic] (Comprehensive Environment

(continued . . .)

Moreover, the factual allegations against Litchfield in this case are essentially and materially identical to the allegations that Doyle made against Litchfield in the Superior Court – *including* Doyle's claim that Litchfield should be liable or should be enjoined due to the presence of hazardous pollutants *alleged* to be leaching from the incinerated sludge ash that was used as part of the landfill cover material.[4]  Doyle's claims here should be barred by res judicata, collateral estoppel, and/or the Rooker-Feldman doctrine, and because Doyle lacks standing.  For those reasons, and for the other reasons expressed in Litchfield's principal memorandum,[5] the motion for summary judgment should be granted.

---

(continued . . .)
Response Compensation & Liability Act of 1980 CERCLA)' and 'Federal Resource Conservation & Recovery Act 42 USC 6901 et sec [sic] (RCRA).'  Ex. D at  ¶ 22e."  Unfortunately, the Appendix citation in that paragraph contained a typographical error, and should have referred to "Ex. **C** at ¶22e."  In Litchfield's Appendix to its Motion for Summary Judgment, Exhibit C is a copy of Doyle's Revised Complaint in the Superior Court (March 17, 1998), wherein the above-quoted allegations of CERCLA and RCRA violations appear at ¶22e.  In his Local Rule 56(a)(2) Statement at ¶6 (and in his Opposition Memorandum at 12 n.4), Doyle knowingly ignores his March 1998 pleading.

[4]   Litchfield's Amended Local Rule 56(a)(1) Statement at ¶7 reads as follows:  "In addition to claiming that the flow of leachate from the landfill had contaminated the Property, the plaintiffs [in the state court action] claimed that Litchfield's closure of its landfill had been handled improperly.  Specifically, Doyle and DiJon alleged that Litchfield had improperly used 'approximately 10,000 cubic yards of incinerated sludge ash from the Naugatuck, Connecticut landfill as part of cover material,' although Litchfield knew or should have known that 'such sludge ash contained toxic metals which would leach pollutants into ground and surface waters,' and that Litchfield had 'failed to properly analyze or test the incinerated sludge ash from Naugatuck, Connecticut.'  Ex. B at  ¶¶ 24d, 24e."  Doyle admits this.  See Plaintiff's Local Rule 56(a)(2) Statement at ¶7 (purporting to object to "citations to superceded [sic] pleadings as irrelevant").

[5]   This Reply Memorandum addresses only certain issues in order to comply with the page limitation of Local Rule 7(d).

I.  RES JUDICATA, COLLATERAL ESTOPPEL, AND THE ROOKER-FELDMAN DOCTRINE

Doyle's claim under CERCLA appears to be based upon the premise that, merely because CERCLA is considered a "strict liability" statute, the owner of property that *a court has found not to be contaminated* can recover environmental response costs from a defendant that *a court has found could not be the source of the claimed contamination*. The notion is absurd on its face. Although CERCLA may be "a remedial statute" (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Opposition") at 12) (quoting Prisco v. A & D Carting, 168 F.3d 593, 602 (2d Cir. 1999)), liability under CERCLA still requires plaintiff to "show that the site in question is a 'facility' from which a release or threatened release of a hazardous substance *causes* a party to incur response costs ...." Interfaith Community Org. v. Honeywell Int'l, Inc., 215 F. Supp. 2d 482, 493 (D.N.J. 2002) (emphasis added); accord Berry v. Armstrong Rubber Co., 989 F.2d 822, 828-29 (5th Cir. 1993) (affirming summary judgment in favor of defendants on CERCLA claim because plaintiffs "failed sufficiently to prove the presence of any hazardous substances" and therefore failed to establish that site was a facility under CERCLA); Norfolk Southern Corp. v. Chevron U.S.A., Inc., 279 F. Supp. 2d 1250, 1279 (M.D. Fla. 2003), rev'd on other grounds, 371 F.3d 1285 (11th Cir. 2004) (granting summary judgment on CERCLA and other claims where plaintiff "failed to create a material issue of fact as to whether [defendant] caused or contributed to the contamination…").

Judge Frazzini concluded that Doyle failed to prove that the Litchfield landfill caused, or could have caused, environmental harm to Doyle. Doyle apparently agrees that Judge Frazzini's findings must be given preclusive effect in this action. See Opposition at 2, 11 n.3.

Because Judge Frazzini's findings on causation are dispositive, collateral estoppel (i.e., issue preclusion) must bar Doyle's claims -- including his CERCLA claim, whether or not res judicata would apply to that particular claim.  E.g., Freeman v. Glaxo Wellcome, Inc., 189 F.3d 160, 163 (2d Cir. 1999) (CERCLA prima facie case requires plaintiff to prove release or threatened release of hazardous substance "caused the plaintiff to incur response costs that were necessary..."); accord Young v. United States, 2005 U.S. App. LEXIS 61, *5-16 (10th Cir. Jan. 4, 2005) (affirming that "CERCLA is not a general vehicle for toxic tort claims," Tenth Circuit held CERCLA cost-recovery action failed because plaintiffs did not incur response costs necessary and consistent with national contingency plan) (attached at Ex. 1). [6]

---

[6]  This is actually demonstrated by several of the decisions Doyle cites.  For example, in Kelley v. Biewer Co., No. 1:91-CV-1032, 1993 WL 186557 (W.D. Mich. May 21,1993) (Opposition at 11), after concluding that res judicata did not bar plaintiff's CERCLA claims because such claims could not have been asserted in state court, Kelley concluded that *collateral estoppel did apply* and that "issues actually determined in the state court prohibit[ed] certain aspects of [the federal] litigation." Id. at *3.  In Nordberg v. Lord, Day, & Lord, No. 84 Civ. 3045, 107 F.R.D. 692 (S.D. N.Y. 1992) (Opposition at 11), after concluding that res judicata would not bar plaintiffs' RICO claim because plaintiffs could not have asserted this claim in state court, the court held that collateral estoppel *could* bar such claims.  Nordberg decided not to give "preclusive effect" to the state court's decision, however, because the record indicated that plaintiffs proceeded pro se in state court; the court concluded that as a result, if it barred the claims, "the rights of other shareholders might be irretrievably prejudiced."  Id. at 701-702.

While courts often refer to collateral estoppel as barring subsequent "identical" issues, certain decisions, including a case that Doyle relies upon, Putnam Resources v. Frenkel & Co., Inc. (Opposition at 24) explain that "[t]he issue sought to be precluded need not be precisely identical to that decided in the prior case as long as it is substantially the same or at least clearly derivative of the prior court's decision on that issue...." Putnam Resources v. Frenkel & Co., Inc., No. CV 123838, 1995 WL 416194 (July 10, 1995); Meehan v. Town of E. Lyme, 919 F. Supp. 80, 86 (D. Conn. 1996) (same).  It is clear that the CERCLA causation claim in this case is sufficiently "identical" to the causation issue decided in the state court.

This conclusion is further supported by Judge Goettel's Ruling on Motion for Leave to Amend Complaint (Oct. 22, 2003) at 7 ("that the state court found that plaintiff did not sustain his burden of proof that the property was contaminated is dispositive" for purposes of barring Doyle's federal claims).

This Court should also reject Doyle's argument that he should be allowed to continue his litigation against Litchfield because of "new test results" that "were not considered in the State Court Action." Opposition at 23; see plaintiff's Ex. D. These "new test results" *were in fact* "considered" in the state litigation. During a pre-trial site walk conducted by Judge Frazzini and counsel, it was discovered that Doyle had just installed three groundwater monitoring wells on the Property. Doyle's counsel announced that Doyle intended to offer test results from those wells (the same documents as plaintiff's Ex. D here) in evidence. Litchfield moved to preclude such evidence on the ground that plaintiffs' surprise, untimely disclosure was unduly prejudicial. In an evidentiary hearing which included expert testimony, Litchfield questioned the reliability of such testing (because the sampling methods may not have been appropriate, and because standards require that freshly drilled wells not be immediately sampled). Furthermore, Litchfield's expert evidence raised serious questions as to the source(s) of the chemical constituents shown in the tests.[7] After hearing the evidence and

---

[7]   For example, the April 2000 test reports showed purported detections of methyl-tert-butyl ether (MTBE) in the groundwater. See Plaintiff's Ex. D at 2, 5. As Judge Frazzini later determined, there had been no MTBE detected in any samples taken at the landfill, nor had there been any MTBE detected in the groundwater monitoring wells near the landfill. The court rejected Doyle's attempt to prove contamination of his Property based on MTBE findings on nearby Camp Dutton Road. Doyle I Decision (Litchfield Appx., Ex. F), 2001 Conn. Super. LEXIS 74, *52 (evidence at trial indicating that MTBE "did not originate at the landfill [but instead] had an on-site origin").

(continued . . .)

arguments on April 28, 2000, Judge Frazzini granted the motion.  See Excerpt-Order dated April 28, 2000 (attached hereto as Ex. 2).  Doyle had the opportunity to challenge this ruling as part of the appeal that he filed from the state court judgment.  But he cannot sidestep the state court's ruling by attempting to offer the same evidence here.[8]

Finally, Doyle also argues that the Rooker-Feldman doctrine is inapplicable "because Plaintiff is not asking this Court to review the State Court decision…."  Opposition at 11 n.3.  But "[u]nder the Rooker-Feldman doctrine, lower federal courts lack jurisdiction over claims that *effectively challenge* state court judgments" and/or that are '*inextricably intertwined*' with state court determinations."  Kropelnicki v. Siegel, 290 F.3d 118, 128-29 (2d Cir. 2002) (internal quotation marks omitted; emphasis added).  Doyle's allegations in this action

(continued . . .)

> There are several other factual inaccuracies or omissions in Doyle's opposition papers, reflecting counsel's lack of familiarity with details of the state court proceedings and the trial.  For example, contrary to counsel's Declaration, Plaintiff's Exhibit B is *not* a "true copy" of the map originally submitted to Connecticut DEP in 1984.  It is an *altered* copy of that map, prepared by Doyle's testifying expert in the state court litigation, Michael Mahan (among other things, the map shows locations where Mr. Mahan took soil and water samples).  Another example is counsel's assertion that Doyle's property was provided with public water due to the landfill.  Opposition at 20.  In fact, the former Doyle property has had a public water line going back several decades.

[8]     Res judicata "prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it."  Honan v. Dimyan, 63 Conn. App. 702, 706 (2001) (internal quotation marks omitted); see also L-Tec Electronics Corp. v. Cougar Electronic Org., 198 F.3d 85, 88 (2d Cir. 1999) ("[r]es judicata applies even where new claims are based on newly discovered evidence, unless the evidence was either fraudulently concealed or it could not have been discovered with due diligence.") (internal quotation marks omitted)); Norfolk Southern Corp., 279 F. Supp. 2d at 1264-65  (where "plaintiff failed to investigate its claims in a timely manner in order to present them in the first litigation," res judicata barred claims "based on recently discovered plaintiff claimed contamination") (internal quotation marks omitted)).

unquestionably "challenge" Judge Frazzini's findings that Doyle's Property was not contaminated and that the landfill could not have caused Doyle any harm. The Rooker-Feldman doctrine does apply here.

## II.  STANDING

Although the Supreme Court "has established a low causation threshold for standing purposes," plaintiff still must show a "*substantial likelihood* that defendant's actions caused plaintiff's harm…." DMJ Assocs., LLC v. Capasso, 288 F. Supp. 2d 262, 272 (E.D. N.Y. 2003) (quoting Duke Power Co. v. Carolina Envtl. Study Group, 438 U.S. 59, 75 n.20 (1978) (emphasis added) (internal quotation marks omitted)). It is Doyle's burden to show that he has suffered an "injury in fact" and that this alleged injury "must be *... fairly traceable to the challenged action of the defendant*, and not ... the result [of] the independent action of some *third party not before the court*."[9] Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992) (emphasis added; internal quotation marks and citations omitted); Student Members of SAME v. Rumsfeld, 321 F. Supp. 2d 388 (D. Conn. 2004) (plaintiff bears burden to establishing standing). Because Judge Frazzini concluded that the Litchfield landfill could not have caused harm to Doyle, and because that finding is binding upon Doyle,[10] Doyle lacks standing to pursue a CERCLA claim.

Furthermore, because Doyle no longer lives on the allegedly contaminated Property and he has no connection to either the Property or the Town of Litchfield, and because RCRA

---

[9]   See Plaintiff's Second Amended Complaint in this action (Sept. 24, 2004) ¶¶ 5, 26-30; see also Opposition at 7 ("Crompton's activities are still central to the present action.")

[10]   Doyle apparently admits this. "[I]n fact, Plaintiff looks to the State Court Decision to establish most of the essential elements of his CERCLA and RCRA claims." Opposition at 11 n.3.

provides only prospective relief by way of injunction, Doyle does not have standing to invoke RCRA.  E.g., Wademan v. Concra, 13 F. Supp. 2d 295, 304 (N.D.N.Y. 1998) (dismissing RCRA claim where plaintiffs "[were] no longer associated with the [allegedly contaminated] building ... [and] "any remedial action ordered by the Court would [thus] not effect or assist the plaintiffs."); cf. Steel Company v. Citizens for a Better Environment, 523 U.S. 83, 107 (1998) ("psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury").

The cases cited by Doyle in support of his standing argument do not assist him.  For example, in DMJ Assocs., which Doyle cites for the proposition that Congress intended to grant citizens broad rights to sue under RCRA (Opposition at 19), plaintiff held a defaulted mortgage interest in the allegedly contaminated property.  The court found that this provided plaintiff a "distinct economic as well as legal interest in the condition and value of the property [which was] enough to provide it with standing to sue for cleanup of the contamination."  Id. at 268.  Similarly, in Interfaith Community Org., 215 F. Supp. 2d at 482 (Opposition at 19), after noting that in order to have standing under RCRA a party need assert only "an identifiable trifle of an injury," the court held that a non-owner *lacked* standing to proceed under RCRA, CERCLA, and other statutes.  Id. at 499.  Here, Doyle holds no ownership interest in the Property, nor does he claim to have any interest in any land allegedly being contaminated by the Litchfield landfill at this time.  Cf. Friends of the Earth v. Consolidated Rail Corp., 768 F.2d 57, 61 (2d Cir. 1985) (Opposition at 19) (allegations that member's children swam in polluted river and/or that member was regularly offended by polluted river sufficient for standing under CWA).  Doyle's own authority fails to support his claim of standing.

III.    CONCLUSION

Doyle's claims fail as a matter of law because the claims are barred by res judicata, collateral estoppel, and/or the Rooker-Feldman doctrine.  Moreover, Doyle lacks standing. For these reasons and the other reasons set forth in the Motion for Summary Judgment, Litchfield respectfully requests that this Court grant the motion and enter a judgment on all counts in favor of Litchfield.

DEFENDANT - TOWN OF LITCHFIELD

By: /s/ George A. Dagon, Jr.
George A. Dagon, Jr. - ct06599
Theresa M. Waugh - ct23559

Murtha Cullina LLP
CityPlace I - 185 Asylum Street
Hartford, Connecticut 06103-3469
Telephone:  860-240-6000
Facsimile:  860-240-6150
Email: gdagon@murthalaw.com
twaugh@murthalaw.com
Its Attorneys

CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2005, a copy of foregoing Town of Litchfield's Reply Memorandum in Support of Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ George A. Dagon, Jr._____
George A. Dagon, Jr.