**JACK YOUNG and DEBBIE YOUNG, Husband and Wife; DAYLE JAMES and BARBARA JAMES, Husband and Wife, Plaintiffs-Appellants, v. UNITED STATES OF AMERICA; CHRISTINE TODD WHITMAN, Administrator of the United States Environmental Protection Agency, in her official capacity; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; GALE NORTON, Secretary of the Interior, in her official capacity; UNITED STATES DEPARTMENT OF THE INTERIOR; J. WILLIAM MCDONALD, Acting Commissioner of the United States Bureau of Reclamation, in his official capacity; UNITED STATES BUREAU OF RECLAMATION, an agency of the Department of the Interior; DONALD EVANS, Secretary of Commerce, in his official capacity; UNITED STATES DEPARTMENT OF COMMERCE, as successor to the Reconstruction Finance Corporation, successor to Defense Plant Corporation; and CITY OF HENRYETTA, an Oklahoma municipal corporation, Defendants-Appellees.**

**No. 02-7133**

**UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT**

***2005 U.S. App. LEXIS 61***

**January 4, 2005, Filed**

**PRIOR HISTORY: [*1]** APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA. (D.C. No. CIV-01-155-S).

**DISPOSITION:** AFFIRMED.

**LexisNexis(R) Headnotes**

**COUNSEL:** Gerald L. Hilsher (Blake K. Champlin with him on the briefs) of Boone, Smith, Davis, Hurst & Dickman, Tulsa, Oklahoma, for Plaintiffs-Appellants.

Todd S. Kim (Thomas L. Sansonetti, Assistant Attorney General, Eric G. Hostetler, Angeline Purdy, and R. Justin Smith with him on the brief) of the United States Department of Justice, Washington D.C., for Federal Defendants-Appellees.

Stephen W. Smith, Henryetta, Oklahoma, for Defendant-Appellee City of Henryetta.

**JUDGES:** Before KELLY, BALDOCK, and BRISCOE, Circuit Judges.

**OPINIONBY:** BALDOCK

**OPINION: BALDOCK**, Circuit Judge.

Plaintiffs Jack Young, Debbie Young, Dayle James, and Barbara James purchased property, at a substantially reduced price, adjacent to a superfund site in Henryetta, Oklahoma. They subsequently discovered hazardous substances on their property, but did not take any action to contain or cleanup those substances. Instead, Plaintiffs sued the Federal Government and the City of Henryetta under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), *42 U.S.C. § § 9601-9675*, **[*2]** and Oklahoma law. Plaintiffs sought to recover, among other things, the costs of responding to the hazardous substances allegedly released from the superfund site.

The district court dismissed all Plaintiffs' claims except their cost-recovery claim under CERCLA § 107(a), *42 U.S.C. § 9607(a)*, and then subsequently granted Defendants' motion for summary judgment on the cost-recovery claim. The court concluded Plaintiffs' cost-recovery claim failed as a matter of law because they were potentially responsible parties, or "PRPs" in CERCLA nomenclature, and therefore unable to assert a cost-recovery claim under *§ 107(a)*. n1 Plaintiffs appeal

the district court's grant of summary judgment on their cost-recovery claim, arguing they are not PRPs and therefore able to maintain a cost-recovery claim under *§ 107(a)*. n2 We have jurisdiction, *28 U.S.C. § 1291*, review the district court's grant of summary judgment de novo (applying the same standard as the district court), and affirm, albeit on different grounds. See *Tate v. Farmland Indus., Inc., 268 F.3d 989, 992 n.2 & 3 (10th Cir. 2001)*.

n1 Congress amended *CERCLA § 107* in January 2002. See Small Business Liability Relief and Brownfields Revitalization Act, Pub. L. No. 107-118, § 221, 115 Stat. 2356 (codified as amended at *42 U.S.C. § 9607(q)*). *Section 107(q)* provides an exception to PRP status under *§ 107(a)(1)-(2)* for "[a] person that owns real property that is contiguous to or otherwise similarly situated with respect to, and that is or may be contaminated by a release or threatened release of a hazardous substance from, real property that is not owned by that person[.]" *42 U.S.C. § 9607(q)(1)*. We do not address what effect, if any, *§ 107(q)* would have on Plaintiffs' cost-recovery claim because both parties disclaimed any knowledge of *§ 107(q)* at oral argument. **[*3]**

n2 Plaintiffs alternatively argue they have a valid defense to liability under *CERCLA § 107(b)(3)* and, if they are PRPs, their cost-recovery claim under *§ 107(a)* is inherently a claim for contribution. Plaintiffs did not raise these arguments in the district court. We therefore summarily reject Plaintiffs' alternative arguments under "the general rule . . . that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff, 428 U.S. 106, 120, 49 L. Ed. 2d 826, 96 S. Ct. 2868 (1976)*.

I.

The material facts are undisputed. Eagle-Picher Industries, along with the Federal Government briefly during World War II, owned seventy acres of land in Henryetta. Eagle-Picher conducted smelting operations on the property. The operations contaminated the property and surrounding areas with lead and arsenic. Eagle-Picher ceased operations in 1969, demolished its smelting plant, and donated the property to the City of Henryetta. In 1996, the EPA designated the property as the "Eagle-Picher Superfund Site" and commenced an action, with cooperating state and local agencies, **[*4]** to cleanup the property. The agencies completed the cleanup in 1998.

Plaintiffs became interested in a 330-acre parcel of property adjacent to the Eagle-Picher Superfund Site in 1999. Plaintiffs generally knew about the EPA's cleanup actions at the superfund site; however, they never reviewed any public documents concerning the superfund site or conducted any environmental tests on the property they intended to purchase. In early 2000, Plaintiffs purchased the 330-acre parcel property adjacent to the superfund site for considerably less than its appraised value. Plaintiffs thereafter surveyed their property, hired an environmental consulting company to conduct an "abbreviated" site investigation, and hired an environmental hydrology and engineering company to assess the potential risks to humans who worked on their property. They claim the cost of such actions totaled $ 237,273.

Plaintiffs' actions revealed hazardous substances, including lead and arsenic, on their property. Plaintiffs also learned that a potential health risk existed for workers on their property. Plaintiffs maintain that hazardous substances continue to migrate onto their property from the superfund site. They **[*5]** have not, however, taken any action to contain the alleged release of, or cleanup, the hazardous substances on their property. Indeed, Plaintiffs have abandoned their property and do not intend to spend any money to cleanup the contamination.

II.

CERCLA is not a general vehicle for toxic tort claims. *County Line Inv. Co. v. Tinney, 933 F.2d 1508, 1517 (10th Cir. 1991)* (per curiam); see also *Gussack Realty Co. v. Xerox Corp., 224 F.3d 85, 91 (2d Cir. 2000)* (per curiam) (explaining "CERCLA does not provide compensation to a private party for damages resulting from contamination."). Instead, "Congress enacted CERCLA to facilitate the expeditious cleanup of environmental contamination caused by hazardous waste releases[,]" *Daigle v. Shell Oil Co., 972 F.2d 1527, 1533 (10th Cir. 1992)*, and to establish a "financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites." *Public Serv. Co. of Colo. v. Gates Rubber Co., 175 F.3d 1177, 1181 (10th Cir. 1999)* (internal quotations omitted). Thus, the twin aims of CERCLA are to cleanup hazardous waste sites and **[*6]** impose the costs of such cleanup on parties responsible for the contamination. See *Meghrig v. KFC Western, Inc., 516 U.S. 479, 483, 134 L. Ed. 2d 121, 116 S. Ct. 1251 (1996)*.

The former, under the statutory scheme, must precede the latter. See *Gussack Realty, 224 F.3d at 91*.

CERCLA "encourages private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others." *FMC Corp. v. Aero Indus., Inc., 998 F.2d 842, 847 (10th Cir. 1993)*. Specifically, CERCLA "provides two types of legal actions by which parties can recoup some or all of their costs associated with hazardous waste cleanup: cost recovery actions under *§ 107(a), 42 U.S.C. § 9607(a)*, and contribution actions under *§ 113(f), 42 U.S.C. § 9613(f)*." *United States v. Colorado & E. R.R. Co., 50 F.3d 1530, 1535 (10th Cir. 1995)*. To establish a prima facie case under *§ 107(a)*, a plaintiff must prove (1) the site is a facility, (2) defendant is a responsible person, (3) the release or threatened release of a hazardous substance has occurred, *and* (4) the release or threatened release caused **[*7]** the plaintiff to incur necessary response costs consistent with the National Contingency Plan (NCP). n3 *FMC, 998 F.2d at 845*.

n3 The circuit courts of appeal are in substantial agreement concerning the elements necessary to establish a prima facie case of liability under *CERCLA § 107(a)*. See *Village of Milford v. K-H Holding Corp., 390 F.3d 926, , 2004 U.S. App. LEXIS 24327, *4, 2004 WL 2661279, *4 (6th Cir. Nov. 23, 2004)*; *Goodrich Corp. v. Town of Middlesbury, 311 F.3d 154, 168 (2d Cir. 2002)*; *Blasland, Bouck & Lee, Inc. v. City of N. Miami, 283 F.3d 1286, 1302 (11th Cir. 2002)*; *Carson Harbor Village, Ltd. v. Unocal Corp., 270 F.3d 863, 870-71 (9th Cir. 2001)*; *Trimble v. Asarco, Inc., 232 F.3d 946, 956 (8th Cir. 2000)*; *In re Reading Co., 115 F.3d 1111, 1117-18 (3d Cir. 1997)*; *Westfarm Assoc. Ltd., P'ship v. Washington Suburban Sanitary Comm'n, 66 F.3d 669, 677 (4th Cir. 1995)*; *Town of Munster, Ind. v. Sherwin-Williams Co., 27 F.3d 1268, 1273 (7th Cir. 1994)*; *Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 668 (5th Cir. 1989)*; *Dedham Water Co. v. Cumberland Farms Dairy, Inc., 889 F.2d 1146, 1150 (1st Cir. 1989)*.

**[*8]**

In this case, Plaintiffs only asserted a cost-recovery claim under *CERCLA § 107*. We, unlike the district court, do not determine whether Plaintiffs are PRPs under *§ 107(a)* and thus unable to assert a cost-recovery claim under the rule in this Circuit that a Plaintiff-PRP must proceed under the contribution provisions of *CERCLA § 113(f)* when the Plaintiff-PRP sues another PRP for response costs. n4 See *Morrison Enters. v. McShares, Inc., 302 F.3d 1127, 1133 (10th Cir. 2002)*; *Sun Co., Inc. v. Browning-Ferris, Inc., 124 F.3d 1187, 1191 (10th Cir. 1997)*; *Colorado & E. R.R. Co., 50 F.3d at 1536*. Instead, we avoid the difficult question of whether Plaintiffs are PRPs because Plaintiffs' claim fails even assuming they are *not* PRPs and thus able to assert a cost-recovery claim under *§ 107(a)*. Plaintiffs' cost-recovery claim fails because, as discussed below, they have not incurred any response costs that are necessary and consistent with the NCP.

n4 The Supreme Court recently noted that several circuit courts of appeal, including the Tenth Circuit, have held "a private party that is itself a PRP may not pursue a *§ 107(a)* action against other PRPs for joint and several liability." *Cooper Indus., Inc. v. Aviall Serv., Inc., - U.S. -, - , 125 S. Ct. 577, 2004 U.S. LEXIS 8271, *23, 2004 WL 2847713 (2004)* (citing, among other decisions, *United States v. Colorado & E. R.R. Co., 50 F.3d 1530, 1534-36 (10th Cir. 1995))*. The Court, however, declined to consider whether those decisions correctly interpreted CERCLA. Id.

**[*9]**

A.

Under *CERCLA § 107(a)(4)(B)*, a private party may recover "any . . . necessary costs of response incurred . . . consistent with the national contingency plan." *42 U.S.C. § 9607(a)(4)(B)*. A plaintiff bears the burden of proving any "response costs" were necessary and consistent with the NCP. *United States v. Hardage, 982 F.2d 1436, 1447 (10th Cir. 1992)*. "CERCLA 'response costs' are defined generally as the costs of investigating *and* remedying the effects of a release or threatened release of a hazardous substance into the environment." *Tinney, 933 F.2d at 1512 n.7* (emphasis added) (citing *42 U.S.C. § 9601(23), (24), (25)*). Thus, "response costs are . . . payments by responsible parties in restitution for cleanup costs." *Atlantic Richfield Co. v. American Airlines, Inc., 98 F.3d 564, 568 (10th Cir. 1996)*. The NCP is a set of EPA regulations that "establish procedures and standards for responding to releases of hazardous substances, pollutants, and contaminants[.]" *42 U.S.C. § 9605(a)*; see also *40 C.F.R. § § 300.1, 300.3* **[*10]** .

A response cost must be "necessary to the containment *and* cleanup of hazardous releases." *Hardage, 982 F.2d at 1448* (emphasis added); *FMC, 998 F.2d at 848*. "The statutory limitation to 'necessary' costs of cleaning up is important. Without it there would be no check on the temptation to improve one's property and charge the expense of improvement to someone else."

*G.J. Leasing Co., Inc. v. Union Elec. Co., 54 F.3d 379, 386 (7th Cir. 1995)*. Consequently, several circuit courts of appeal have concluded a response cost is only "necessary" if the cost is closely tied to the *actual cleanup* of hazardous releases. See *Ellis v. Gallatin Steel Co., 390 F.3d 461, -, 2004 U.S. App. LEXIS 22252, *51-52, 2004 WL 2382166, *17 (6th Cir. Oct. 26, 2004)* (explaining only work that is "closely tied" to the actual cleanup of contaminated property may constitute a necessary response cost); *Black Horse Lane Assoc., L.P. v. Dow Chemical Corp., 228 F.3d 275, 297 (3d Cir. 2000)* (holding response costs were not necessary because they did not pertain to a remedial or removal action on the contaminated property); *Gussack Realty, 224 F.3d at 92* **[*11]** (explaining a necessary cost of response must be incurred in remedying a site); *Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 669-70 (5th Cir. 1989)* (explaining that "to justifiably incur response costs, one necessarily must have acted to contain a release threatening the public health or the environment."). We too have recognized costs cannot be deemed "necessary" to the containment and cleanup of hazardous releases absent some nexus between the alleged response cost and an actual effort to respond to environmental contamination. See *Hardage, 982 F.2d at 1448*.

Any response action must also be "consistent" with the NCP. *Bancamerica Commercial Corp. v. Mosher Steel of Kan., Inc., 100 F.3d 792, 796 (10th Cir. 1996)*. The NCP provides "[a] private party response action will be considered 'consistent with the NCP' if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements in [*40 C.F.R. § 300.700(c)(5)-(6)*], *and* results in a CERCLA-quality cleanup[.]" *40 C.F.R. § 300.700(c)(3)(i)* (emphasis added). In turn, *§ 300.700(c)(5)-(6)* provide **[*12]** requirements for worker health and safety, documentation of cost recovery, permit requirements, identification of applicable and appropriate requirements, remedial site investigation, selection of a remedy, and providing an opportunity for public comment concerning the selection of a response action. See also *Gates Rubber, 175 F.3d at 1182*. A "CERCLA-quality cleanup" results if the response action protects human health and the environment through the utilization of permanent solutions and alternative treatment or resource recovery technologies to the maximum extent possible. See *Franklin County Convention Facilities Auth. v. American Premier Underwriters, Inc., 240 F.3d 534, 543 (6th Cir. 2001)*.

B.

In this case, Plaintiffs claim they incurred $ 237,273 in responding to the release or threatened release of hazardous substances from the Eagle-Picher Superfund Site. To be sure, some of the costs Plaintiffs expended are "classic examples" of preliminary steps taken in response to the discovery of the release or threatened release of hazardous substances, such as site investigation, soil sampling, and risk assessment. Other costs Plaintiffs seek to recover, **[*13]** such as the cost of surveying their property, stretch the statutory language entirely too far. n5 Plaintiffs' cost-recovery claim fails, however, even if we *assume* all costs they incurred could be properly classified as "response costs" because the costs were neither necessary to the containment and cleanup of hazardous releases nor consistent with the NCP.

> n5 Plaintiffs also claim $ 201,500 of the total incurred costs were for legal expenses; however, Mr. Young submitted an affidavit stating Plaintiffs "have not paid any moneys for attorney fees for handling this case and do not owe [the law firm] any money for attorney fees for this matter."

Plaintiffs' alleged response costs were not "necessary" to the containment or cleanup of hazardous releases because the costs were not tied in *any* manner to the actual cleanup of hazardous releases. Absolutely no nexus exists between the costs Plaintiffs expended and an actual effort to cleanup the environmental contamination. To the contrary, Plaintiffs maintain **[*14]** their property continues to be contaminated. Plaintiffs also repeatedly testified they do not intend to spend any money to cleanup the contamination on their property. Plaintiffs' cost-recovery claim therefore fails as a matter of law because their alleged response costs were not necessary to either the containment or cleanup of hazardous releases.

Plaintiffs response actions were also inconsistent with the NCP for essentially the same reasons. The NCP provides that in a private party remedial cost-recovery action, such as this, the response action must be in substantial compliance with *40 C.F.R. § 300.700(c)(5)-(6) and* result in a CERCLA-quality cleanup. The only evidence in the record that indicates Plaintiffs complied with *§ 300.700(c)(5)-(6)* is the single conclusory statement by their expert that they incurred "response costs consistent with the NCP which includes the work performed by my company for the [site investigation]." We doubt such a statement is sufficient to raise a *genuine* issue of material of fact, but assuming it does, Plaintiffs' response action is still inconsistent with the NCP because it did not result in *any* - let alone **[*15]** CERCLA-quality - cleanup. "Because [Plaintiffs] have incurred no costs

consistent with the NCP, CERCLA provides them no remedy." *Tinney, 933 F.2d at 1512*.

Plaintiffs argue that they were not required to follow initial site investigation and monitoring with additional removal or response actions because the source of the hazardous substances is from the superfund site, which is controlled by Defendants. They argue they could not be expected to trespass onto the superfund site; rather they brought a civil action. Even if the source is the superfund site, we still lack evidence to suggest that the expenses were in any way related to containment or cleanup of the hazardous substances on Plaintiffs' property. Rather, the costs appear to have been incurred in connection with preparing for and undertaking this litigation. While costs for initial investigation and monitoring might be compensable if linked to an actual effort to contain or cleanup an actual or potential release of hazardous substances, costs incurred solely for litigation are not. *Hardage, 982 F.2d at 1447*; *Black Horse Lane Assoc., L.P., 228 F.3d at 295-96*; *Redland Soccer Club, Inc. v. Dep't of the Army, 55 F.3d 827, 850 (1995).* **[*16]**

III.

Plaintiffs have failed to establish, as a matter of law, an essential element of their cost-recovery claim under *CERCLA § 107(a)(4)(B)*; namely, that the release or threatened release of a hazardous substance caused them to incur necessary response costs consistent with the NCP. Plaintiffs, moreover, sought to recover the costs of responding to an alleged release of hazardous substances without cleaning up their contaminated property. Such a result would defeat the main purpose of CERCLA - that hazardous waste sites actually be cleaned up - and flip the statutory scheme on its head. Because CERCLA is about "cleanup," and none occurred here, the district court's order granting Defendants' motion for summary judgment is

AFFIRMED.