UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------X   Civil Number:  02-CV-656 (JCH)
TIMOTHY P. DOYLE,                                           :
                                                           :
            Plaintiff,                                     :
                                                           :
      v.                                                   :
                                                           :
TOWN OF LITCHFIELD,                                        :
                                                           :
            Defendant.                                     :
------------------------------------------------------------X   October 21, 2005
```

### JOINT PRETRIAL MEMORANDUM

Pursuant to this Court's Final Pre-Trial Order (June 1, 2005), the Standing Order

Regarding Trial Memoranda in Civil Cases and the Local Rules of the United States District

Court, plaintiff Timothy Doyle ("Doyle") and the Town of Litchfield ("Litchfield") together

submit this Pretrial Memorandum.


1.      **TRIAL COUNSEL**:

        For Plaintiff:
        John T. Shaban (ct14075)
        Whitman Breed Abbott & Morgan LLC
        100 Field Point Rd. Greenwich, CT 06830
        203-869-3800
        203-869-1951 (facsimile)
        jshaban@wbamct.com

<u>For Defendant Town of Litchfield</u>:
George A. Dagon, Jr. (ct06599)
Theresa M. Waugh (ct23559)
Murtha Cullina LLP
CityPlace I, 185 Asylum St.
Hartford CT 06103
860-240-6039
860-240-6150 (facsimile)
gdagon@murthalaw.com
twaugh@murthalaw.com

2. **JURISDICTION**:

This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1331 because this action arises under the laws of the United States.

3. **JURY/NON-JURY TRIAL**:

To be determined. Plaintiff believes that he has a right to a jury. Defendant contends that, because the sole remaining claim in this action is for recovery of costs under CERCLA, this matter will be tried to the Court.

4. **LENGTH OF TRIAL**:

Three days, with approximately 1.5 days for each party.

5. **FURTHER PROCEEDINGS**:

The Court must still decide whether Plaintiff has a right to a jury trial. Pursuant to the Court's direction, Plaintiff will submit a letter brief discussing his position regarding same.

Litchfield has addressed the law supporting its position that this is a non-jury trial in its Proposed Findings of Fact and Conclusions of Law, which it submits today.

Plaintiff also believes that the Court may have to rectify certain discovery issues prior to trial, and/or rule on a Motion to Preclude filed by Plaintiff, due to the Town's objections to Plaintiff's August 19, 2005 discovery requests.  Counsel will attempt to resolve these differences well before the pretrial conference.

While Litchfield does not anticipate requesting the Court to rule upon additional matters before trial, Litchfield respectfully reserves the right to do so because:  (1) it is unclear what Doyle might address in any Motion to Preclude, and (2) to date, Litchfield has not received copies of all of Doyle's proposed exhibits.

6.    **NATURE OF CASE**:

    A.    Plaintiff's Statement of the Case:

The present action has been narrowed by this Court's May 31, 2005 Ruling Re: Defendants Motion for Summary Judgment (the "Ruling") and the Court's denial of Plaintiff's request to amend the complaint to rename the Crompton defendants (Crompton Corporation and its subsidiaries, Uniroyal Chemical Company and Naugatuck Treatment Company). Plaintiff's case now consists of his effort to recover from the Town his response costs under the Comprehensive Environmental Response, Compensation and Liability Act  ("CERCLA"), 42 U.S.C. §9601 et seq., incurred by Plaintiff responding to the undisputed release of hazardous substances from the Town's Landfill.

B.     <u>Defendant's Statement of the Case</u>:

This matter has almost a decade of litigation history, beginning with state-court litigation in 1997.  The operative Complaint before this Court is plaintiff's Second Amended Complaint dated September 24, 2004 ("Complaint"), as modified by the Court's May 31, 2005, ruling on Litchfield's Motion for Summary Judgment.  In this Complaint, similar to the 7 complaints that came before it,  Doyle repeats many of his claims from the previous state court litigation, including the central allegation that property that he years ago lost in foreclosure proceedings, i.e.,  521 South Plains Road, was contaminated by leachate from the Litchfield landfill.

Doyle alleges that Uniroyal Chemical Company ("Uniroyal") and Naugatuck Treatment Company ("NTC"), subsidiaries of Crompton Corporation ("Crompton"), provided Litchfield with sludge ash as part of the cover material used by Litchfield for its closure of the landfill.  Doyle claims that, despite representations by Uniroyal/NTC that the ash was appropriate for landfill disposal, and despite approval of such disposal by the Connecticut DEP, the ash that was delivered by Uniroyal/NTC contained "high levels of hazardous substances."  Doyle alleges that Litchfield "purposefully, recklessly and/or negligently failed to monitor and recognize" the hazardous nature of the ash used in the landfill cover material, resulting in hazardous substances leaching out of the landfill and reaching the property at 521 South Plains Road "and/or surrounding areas."  In Count One, Doyle invokes CERCLA and seeks recovery of response costs "as a result of the aforementioned release."

In November 2004, Litchfield moved for summary judgment on all counts.  On May 31, 2005, Judge Hall issued a memorandum of decision, granting Litchfield's motion as to Counts Two (Resource Conservation and Recovery Act), Three (cost recovery under Conn. Gen. Stat. § 22a-452), Four (strict liability) and Five (negligence per se).  Judge Hall denied summary judgment only as to Count One, the CERCLA cost recovery claim.

In a previous May 2002 complaint that Doyle filed in this Court, plaintiff also sued Crompton Corporation ("Crompton").  During September 2002, Crompton filed a motion to dismiss on the basis that plaintiff's claims were collaterally estopped and barred by the statute of limitations.  Plaintiff did not file any objection and the court (Goettel, J.) granted Crompton's motion to dismiss on October 8, 2002.  In a motion to amend his complaint dated July 10, 2003, plaintiff sought to add Crompton and its subsidiaries as defendants in his action.  Judge Goettel denied that motion.

Most recently, in June 2005, Doyle filed a renewed motion to amend his complaint. Plaintiff's proposed Third Amended Complaint once again pleaded several counts against the Crompton parties.  During a status conference conducted on July 25, 2005, Judge Hall denied the motion and ruled that the proposed amendment would not be allowed.  Consequently, Doyle will try this matter against only Litchfield.

Litchfield contends that Doyle will be unable to establish that he is entitled to recover from Litchfield for any "response costs" and that Litchfield ultimately and finally will prevail in this litigation.  Specifically, Doyle will be unable at trial to meet his burden of establishing

that any costs incurred were necessary and/or reasonable; he also will be unable to establish

any connection between the Litchfield landfill and the costs he incurred. Moreover, to the

extent that Doyle incurred any costs due to his perception of a "release," the costs incurred

were not of the type contemplated by CERCLA. Finally, even if Doyle is able to establish

that he incurred any recoverable costs under CERCLA, he will not be able to recover interest

on any such expenditures because he did not specifically demand reimbursement for such

costs from Litchfield.

7.    **TRIAL BY MAGISTRATE JUDGE**:

The parties consent to a trial by a Magistrate Judge.

8.    **LIST OF WITNESSES**:

<u>BY PLAINTIFF</u>:

1.    Timothy P. Doyle
      229 Bacon Road #123
      Woodbury, CT 06798


2.    Dennis McMorrow
      Bershire Engineering & Surveying
      143 Bantum Lake Road
      Bantum, CT 06750
      860-567-8007

      Dennis McMorrow (CCA engineer): will discuss his work and communications with

      Plaintiff regarding CCA's testing and results at the Property as part of Plaintiff's case

6

to show the reasonableness of his belief that his Property was threatened and his

response.

3.      Martin Connor
        Land Use Department
        140 Main Street, Rm 304
        Torrington, CT 06790
        860-489-2220

        Martin Connor (Town land use officer): will be called to testify regarding his

communications with Plaintiff regarding the Town's testing and results at the Landfill

and Property as part of Plaintiff's case to show the reasonableness of his belief that his

Property was threatened and his response.

4.      Craig Minor
        Town Planner
        41 West Street
        Cromwell, CT 06416
        860-632-3422

        Craig Minor (former Town land use official): will be called to testify regarding his

communications with Plaintiff regarding the Town's testing and results at the Landfill

and Property as part of Plaintiff's case to show the reasonableness of his belief that his

Property was threatened and his response.

5.      Leo Paul
        First Selectman
        74 West Street
        P.O. Box 488
        Litchfield, CT 06759
        860-567-7550

First Selectmen Paul (possible witness): will be called to testify regarding his communications with Plaintiff regarding the Town's testing and results at the Landfill and Property as part of Plaintiff's case to show the reasonableness of his belief that his Property was threatened and his response.

6.  Perley H. Grimes, Jr., Esq.
    Cramer & Anderson LLP
    46 West Street
    P.O. Box 278
    Litchfield, CT 06759-0278
    860-567-8718

Perley Grimes, Jr., Esq.: will be called to testify regarding his work for Plaintiff and his communications with the Town on behalf of Plaintiff as part of Plaintiff's case to show the reasonableness of his belief that his Property was threatened, the appropriateness of his response, and the recovery of his legal fees associated with Plaintiff's response efforts.

Plaintiff also reserves the right to call any witness identified by the Town.

<u>BY DEFENDANT</u>:

Dhanwant Sethi, Ph.D.
627 Main Street
Monroe, CT

Dr. Sethi is likely only a rebuttal witness; but he was the laboratory analyst to whom Mr. Doyle brought samples of surface water and soil for testing in 1996 and 1997.

(All of these samples were taken by Mr. Doyle himself, without following any

sampling protocol, and therefore the results of those tests were unreliable, although Mr. Doyle did not realize that fact until much later.)  Mr. Doyle later claimed that these test results provided him with a basis for reasonable concern about contamination of his property.  But Dr. Sethi characterized the test results as "low" or "insignificant" or "small."

Lisa DiJon
76 Williams Street
Shelton, CT

Ms. DiJon is likely only a rebuttal witness; but she testified to certain differences with Mr. Doyle, including differences in their perception of the relative importance of pursuing litigation relating to the Litchfield landfill.

Michael Mahan
622 Bantam Road
Litchfield, CT

Mr. Mahan is likely only a rebuttal witness; but he was the environmental consultant retained to testify as an expert witness at the state court trial on behalf of Mr. Doyle. Mr. Mahan's activities related solely to litigation support and had nothing to do with any removal, remediation, or cleanup.

Timothy Webster
433 W. 44th Street
New York, NY

Mr. Webster is likely only a rebuttal witness; but he was one of the former owners of the subject property.  He testified to a detailed description of the property and its

historical uses, creation of the pond, etc., and the condition of the property at the time of its sale.

Litchfield respectfully reserves the right to call further rebuttal witnesses, and Litchfield reserves the right to call any witnesses that the plaintiff has identified.

9.    **DEPOSITION TESTIMONY**:

Plaintiff does not expect any witnesses to testify by deposition.  Litchfield may offer transcripts and testimony from the state court trial as indicated in Litchfield's list of exhibits.

10.    **INTERROGATORIES/REQUESTS TO ADMIT**.

Plaintiff intends on offering the Town's Answer and judicial admissions made in the Town's Motion for Summary Judgment as evidence.

11.    **EXHIBITS**:

By Plaintiff:  See Exhibit A

By Defendant: See Exhibit B.

12.    **ANTICIPATED EVIDENTIARY PROBLEMS**:

Plaintiff believes that the Court may have to rectify certain discovery issues prior to trial, and/or rule on a Motion to Preclude filed by Plaintiff, due to Litchfield's objections to Plaintiff's August 19, 2005 discovery requests.  Counsel will attempt to resolve these differences well before the pretrial conference.

While Litchfield expects counsel will be able to resolve any evidentiary issues, because Litchfield has not yet received copies of all of the exhibits that Doyle has proposed,

and it is unclear what Doyle refers to in a possible "Motion to Preclude," Litchfield respectfully submits that it is unable at this time fully to estimate evidentiary problems that may arise.

13.    **MOTIONS IN LIMINE**:

See above.

14.    **GLOSSARY**:

Not applicable.

15.    **TRIAL TO COURT/JURY**:

Litchfield maintains that, because the sole remaining claim in this action is for recovery of costs under CERCLA, Plaintiff is not entitled to a jury trial and this matter will be tried to the Court.  In the event that this Court rules that this matter should be tried to a jury, Litchfield respectfully reserves the right to propose jury instructions, voir dire questions, and/or jury interrogatories and to object to Doyle's proposed jury instructions, voir dire questions and jury interrogatories.  Should Litchfield be required to submit jury instructions and voir dire questions, Plaintiff reserves the right to object to same.

(a)    **Court**:

As discussed above, Doyle maintains that he has a right to a jury.  If the Court rules otherwise, Doyle respectfully reserves the right to submit his proposed findings of fact and conclusions of law.  Litchfield today submits Proposed Findings of Fact and Conclusions of Law under separate cover.

11

Stipulated Facts:

The parties stipulate to the Facts section of this Court's May 31, 2005 Ruling Re: Defendant's Motion for Summary Judgment. The parties also agree that contaminated leachate was released from the Landfill and that hazardous substances have entered and will continue to enter surrounding ground waters. See Answer at ¶¶ 19-24. Litchfield today submits additional proposed findings of fact.

Stipulations of Contested Issues of Fact and Law

1.      Whether Doyle is entitled to a jury trial;

2.      Whether Doyle's costs were in response to the release and/or threatened release of hazardous substances from the Litchfield landfill as defined by CERCLA;

3.      Whether those costs were necessary and reasonable;

4.      Whether Doyle has met his burden under CERCLA to establish that his actions were necessary and substantially consistent with the national contingency plan;

5.      Whether Doyle's expenses are recoverable under CERCLA;

6.      Whether Doyle acted reasonably in incurring any such costs;

7.      Whether any "investigatory" costs were precipitated by a release or threatened release;

8.      Whether Doyle can establish that he is entitled to recover for such response costs under CERCLA because he paid for them and/or is obligated for the costs.

9.      Whether Doyle is entitled to recover under CERCLA for any attorney fees.

10.    Whether Doyle is entitled to recover any interest in this matter and if yes, when did any such interest begin to accrue.

<u>Litchfield's Additional Contested Issues of Fact and Law</u>:

As discussed in Litchfield's Proposed Conclusions of Law, which it files today, Litchfield maintains that this Court must also address the following:

1.    Whether Litchfield was actually responsible for a release or threatened release that caused Doyle to incur response costs.

2.    Whether Doyle will be able to establish a connection between any costs incurred and hazardous materials migrating from the Litchfield landfill.

3.    Whether Doyle will be able to establish that any costs that he incurred resulted in the actual containment or clean-up of hazardous substances.

**(b)    Jury**

**(1)    <u>Proposed Voir Dire Questions</u>:**

**(2)    <u>Proposed Jury instructions</u>:**

**(3)    <u>Proposed Jury Interrogatories</u>:**

Plaintiff's proposed voir dire questions, jury instructions and jury interrogatories are attached hereto as Exhibit C.

Litchfield has not submitted voir dire questions, jury instructions, and/or jury interrogatories at this time because, as noted, Litchfield maintains that this case is a non-jury matter.  Litchfield today submits Proposed Findings of Fact and Conclusions of Law and

respectfully reserves the right to propose jury instructions, voir dire questions, and/or jury interrogatories and to object to Doyle's proposed jury instructions, voir dire questions and jury interrogatories, should this Court rule that this matter will be tried before a jury.

PLAINTIFF:


By  /s/ John T. Shaban
      John T. Shaban (ct14075)
      Whitman Breed Abbott & Morgan LLC
      100 Field Point Rd.
      Greenwich, CT 06830
      203-869-3800
      203-869-1951 (facsimile)
      *jshaban@wbamct.com*

DEFENDANT, TOWN OF LITCHFIELD:


By  /s/ George A. Dagon
    George A. Dagon (ct06599)
    Theresa M. Waugh (ct23559)
    Murtha Cullina LLP
    CityPlace I, 185 Asylum St.
    Hartford, CT 06103
    860-240-6039
    860-240-6150 (facsimile)
    *gdagon@murthalaw.com*
    *twaugh@murthalaw.com*

EXHIBIT A – PLAINTIFF'S EXHIBITS

Ex No.                    Description               (Bates No. as produced by Plaintiff):

1.      "Basis of Mahan Opinion" regarding Doyle contamination (143).

2.      Miscellaneous photographs taken by plaintiff in 1996 through 1998.

3.      Plaintiff's hand drawn map depicting redistribution of drainage and work done

        on Doyle property (0001).

4.      June 21, 1982 Order from the Connecticut DEP regarding the Landfill (Exhibit

        A of Complaint).

5.      Map depicting "No-Soil Development Area" prepared by DEP (Exhibit B of

        Complaint).

6.      September 10, 1991 letter from NTC to McKeegin from the State of

        Connecticut for a disposal of sludge-ash at Town of Litchfield Landfill (Exhibit

        C to Complaint).

7.      September 20, 1991 letter from Connecticut DEP to Naugatuck Treatment

        Company ("NTC") for a disposal of sludge-ash at NTC. (Exhibit C to

        Complaint).

8.      May 7, 1996 invoice from Carroccio-Covill and Associates, Inc. ("CCA") to

        plaintiff regarding Doyle project and pond repair (149-152).

9.      May 18, 1996 invoice from Enviro Analytical Inc. with results attached (153-

        157).

10.    June 2, 1996 Pond Restoration Plan prepared by CCA (033).

11.    July 25, 1996 invoice from CCA re surveying and meetings with Town (032).

12.    July 27, 1996 invoice from McElhone Construction re blasting (035).

13.    August 1, 1996 invoice from Bob Pabst Land Clearing (036).

14.    August 7, 1996 statement from Barry Construction (blasting and piping) (037).

15.    November 4, 1996 invoice from Southbury Fence Company (031).

16.    December 9, 1997 Cramer & Anderson letter to Attorney Dagon re testing
       (047).

17.    December 12, 1997 letter from Aaron Environmental to Perley Grimes, Jr.,
       Esq. re testing at Doyle property (147-148).

18.    May 2, 1997 invoice from James McElhone (drilling and blasting consulting)
       (034).

19.    May 2, 1997 Cramer & Anderson retainer letter (038-040).

20.    May 7, 1997 Cramer & Anderson letter re labs and testing (041-042).

21.    May 12, 1997 Cramer & Anderson letter to Aaron Environmental re testing
       (049-50).

22.    May 13, 1997 Cramer & Anderson letter re testing to Town First Selection
       (043).

23.    May 22, 1997 Fax Cover Sheet/Testing Tables from Aaron Environmental to
       Perley Grimes (144-146).

24.    June 2, 1997 Analytical Lab Data Report from Aaron Environmental (137-139).

25.    July 7, 1997 Doyle letter to Attorney Grimes re testing and negotiations with Town (048).

26.    July 31, 1997 Cramer & Anderson letter to Attorney Dagon re testing (044-46).

27.    September 7, 1997 invoice from Enviro Analytical Inc. with results attached (140-142).

28.    December 21, 1998 Study Area/Sample Location Map created by SMC Environmental (075).

29.    December 24, 1998, Summary of Environmental Sampling at Little Pitch Road and Surrounding Areas, SMC Environmental (produced in SCA, voluminous document, copy available upon request).

30.    March 26, 1998 letter from SMC Environmental to plaintiff regarding landfill testing project (078-79).

31.    September 1, 1998 Spectrum Analytical Inc. lab results as hired by SMC Environmental (080-136).

32.    February 25, 1999 Summary of Findings, Doyle Pond Little Pitch Road: prepared by Hume and Associates (Bates 002-027.)

33.    March 22, 2000 letter from SMC Environmental to Plaintiff describing costs in connection with monitoring and response (052-053).

34.    April 26, 2000 Spectrum Analytical Inc. laboratory report (056-072).

35.    April 27, 2000 Fax Cover Sheet from Tranfo & Tranfo to Thomas F. Hogan, Esq., re SMC and Spectrum lab reports (073-74).

36.    April 28, 2000 analysis by Spectrum Analytical Inc. for SMC Environmental (054-55).

37.    May 11, 2000 invoice from SMC Environmental (076-77).

38.    January 23, 2001 Cramer & Anderson statement of account (051).

39.    Defendant's exhibits from the SCA regarding Plaintiff's expenditures responding the release or threatened release from the Landfill.

EXHIBIT B – DEFENDANT'S EXHIBITS

No.                Description


101    Memorandum of Decision (Frazzini, J.), Timothy Doyle v. Arthur Webster and
       consolidated actions, January 8, 2001.

102    Memorandum of Decision (Frazzini, J.) on Motion for Reargument, Lisa DiJon v.
       Town of Litchfield and consolidated actions, October 10, 2001.

103    Summons and Complaint with Verification, Lisa DiJon v. Town of Litchfield,
       September 24, 1997.

104    Amendment to Complaint, Lisa DiJon v. Town of Litchfield, October 29, 1997.

105    Second Amended Complaint, Lisa DiJon v. Town of Litchfield, May 1, 1998.

106    Third Amended Complaint, Lisa DiJon v. Town of Litchfield, April 21, 2000.

107    Transcript of Order (Frazzini, J.), Lisa Doyle v. Hugh Webster and consolidated
       actions, April 28, 2000.

108    Transcript, deposition of Dhanwant Sethi, Lisa DiJon v. Town of Litchfield, February
       23, 2000.

109    Transcript, deposition of Lisa DiJon, Lisa DiJon v. Town of Litchfield, September 1,
       1999.

110    Transcript, deposition of Timothy Doyle (vol. I), Lisa DiJon v. Town of Litchfield,
       September 2, 1999.

111    Transcript, deposition of Timothy Doyle (vol. II), Lisa DiJon v. Town of Litchfield,
       September 15, 1999.

112    Transcript, testimony of Martin Connor, Lisa Doyle v. Hugh Webster and consolidated
       actions, May 30, 2000.

113    Transcript, deposition of Michael Mahan, <u>Lisa DiJon v. Town of Litchfield</u>, February 11, 2000.

114    Drawing, "Improved Drainage & Pond Maintenance Plan," Timothy Doyle.

115    Application for Conservation Permit, Timothy Doyle.

116    Conservation Permit No. 96-024, Litchfield Conservation Commission to Timothy Doyle, June 13, 1996.

117    Zoning Permit No. 96056, Litchfield Planning & Zoning Commission to Timothy Doyle, June 27, 1996.

118    Building Permit No. 7,257, Litchfield Building Dept. to Timothy Doyle, July 16, 1996.

119    Litchfield Landfill Closure Plan, Fuss & O'Neill Inc., with attached Appendices, April 1992.

120    Letter, John DeVillars (US EPA) to Hon. Nancy Johnson (US Rep.), July 21, 1997.

121    Quitclaim Deed, Lisa DiJon to Lisa DiJon and Timothy Doyle, executed February 13, 1998, recorded February 18, 1998.

122    Letter, David McIntyre (US EPA) to Hon. Nancy Johnson (US Rep.), August 17, 1998, with attached Site Investigation Closure Report, July 21, 1998.

123    Invoice Nos. 43223-43225, EnviroAnalytical Inc. to J.P. Maguire Associates, May 18, 1996, with attached reports by Dhanwant Sethi.

124    Invoice Nos. 48452-48455, EnviroAnalytical Inc. to J.P. Maguire Associates, September 7, 1997, with attached report by Dhanwant Sethi.

125    Invoice No. 49621, EnviroAnalytical Inc. to J.P. Maguire Associates, March 18, 1998, with attached reports by Dhanwant Sethi.

126    Conservation Commission records re Permit No. 96-024, including application by Timothy Doyle dated May 1, 1996 and received May 8, 1996, minutes of meeting June 12, 1996, applicant's engineering plan with notation of abutting owner approval, letter

from Martin Connor to Timothy Doyle dated June 12, 1996, start card July 15, 1996, and notes of Timothy Doyle and Martin Connor.

127     Application for Building Permit, Timothy Doyle, May 30, 1996, with attached verification of responsibility, July 8, 1996, and certificate of insurance, July 9, 1996.

128     Invoice No. 10748, Carroccio-Covill & Assoc. Inc. to Tim Doyle, July 25, 1996.

129     Invoice, McElhone Construction Company to Tim Doyle, July 27, 1996.

130     Invoice No. 15041, Bob Pabst Land Clearing Inc. to Tim Doyle, August 1, 1996.

131     Invoice, Barry Const. Inc. to Tim Doyle, August 7, 1996.

132     Proposals for fencing next to house, Southbury Fence Company to Tim Doyle, November 4, 1996.

133     Proposals for fencing around barn, Southbury Fence Company to Tim Doyle, November 4, 1996.

134     Invoice No. 970501, James McElhone to Tim Doyle, May 2, 1997.

135     Letter authorizing disposal of sludge ash, David Nash (CT DEP) to Douglas Ritchie (Naugatuck Treatment Company), September 20, 1991.

136     Minor Permit Amendment to Permit No. 074-2L (Litchfield landfill closure), Robert Moore (CT DEP), December 8, 1992.

137     Letter approving completed closure of Litchfield landfill, Richard Barlow (CT DEP) to David Thompson (Litchfield Public Works Dept.), December 15, 1994.

138     Letter, Atty. Perley Grimes to Evelyn Goodwin (Litchfield Town Clerk), May 12, 1997.

139     Letter, Sidney Holbrook (CT DEP) to Timothy Doyle, August 20, 1997.

140     Letter, Timothy Doyle to Sidney Holbrook (CT DEP), August 6, 1997.

141    Citation and Appeal, <u>Lisa DiJon a/k/a Lisa Doyle v. Litchfield Planning and Zoning Commission and White Memorial Foundation</u>, August 21, 1997.

142    Invoices (10304 dated August 12, 1998; 10351 dated September 15, 1998; 10525 dated December 17, 1998; 10556 dated January 6, 1999), SMC Environmental to Timothy Doyle.

143    Removal Program Preliminary Assessment / Site Investigation Report, Roy F. Weston Inc. to US EPA, site inspection September 24, 1997, report dated February 24, 1998, with attached Appendices.

144    Removal Program Preliminary Assessment / Site Investigation Report, Roy F. Weston Inc. to US EPA, site inspection September 24, 1997, report dated August 10, 1998, with attached Appendices.

145    Aerial photo of subject area, Golden Aerial Surveys Inc., CT DEP, April 20, 1995.

146    Engineer's drawing, "Pond Restoration Plan prepared for Tim Doyle," Carroccio-Covill & Associates Inc., June 2, 1996.

147    Article, "EPA to Test Water at Litchfield farm," Joe O'Brien, Waterbury *Republican American*, July 8, 1997.

148    Article, "Is Field Plan a Health Threat?  Resident Claims Pollution Is a Problem," Elf Lefferts, Litchfield *Enquirer*, August 8, 1997.

149    Letter, Timothy Doyle to Joseph Dunn (Advanta Mortgage USA), January 19, 1996.

150    Agreement to Sell and Purchase Real Estate, purchaser Lisa DiJon, sellers Arthur Webster, Timothy Webster and Hugh Webster, Trustees for Karl Webster, November 16, 1995, with contingency addendum.

151    Quit Claim Deed, Trustees Deed, and Open-End Mortgage, documents recorded in the Litchfield Land Records at Vol. 231 Pages 102-110, on March 11, 1996.

152    Transcript, testimony of Timothy Webster, <u>Lisa Doyle v. Hugh Webster</u> and consolidated actions, May 24, 2000, and June 2, 2000.

153    Letter, Arthur Boehm to George Dagon, July 7, 1997, with attached results of testing of water samples taken at Doyle property on June 2, 1997.

154    Letter, Arthur Boehm to George Dagon, July 7, 1997, with attached results of testing of soil samples taken at Litchfield landfill on June 2, 1997.

EXHIBIT C

**I.**     **PROPOSED VOIR DIRE QUESTIONS (BY PLAINTIFF)**

(1) Do you own real estate?

      a.   As a primary residence?

      b.   As an investment?

      c.   As a landlord?

(2) Have you ever had problems with your town or local government?

      a.   What kind of problems?

      b.   How were they resolved?

(3) Do you believe that a town government has the responsibility to be open and frank with its residents and land owners?

(4) Do you believe that a property owner should be allowed to take whatever steps he believes necessary to protect his investment?

(5) Do any of you own your own business?

      a.   What kind?

      b.   How was it funded at its inception?

(6) Do you believe fundamental fairness is as important to our system of justice as strict interpretation of law?

(7) Have any of you declared bankruptcy?

      a.   What was the primary cause?

**II        PROPOSED JURY INSTRUCTIONS (BY PLAINTIFF)**

In the present action Plaintiff seeks to recover from the Town his "response costs" under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"),  42 U.S.C. §9601 et seq. -- perhaps better known as the "Super Fund Act" -- incurred by him responding to the undisputed release of hazardous substances from the Town's Landfill.

_CERCLA_

CERCLA is a broad remedial statute enacted to assure "that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions." Prisco v A&D Carting, 168 F.3d 593, 602 (2d Cir. 1999), quoting B.F. Goodrich v. Betkoski, 99 F.3d 505, 514 (2d Cir. 1996).  As a remedial statute, CERCLA is construed liberally to give effect to its purposes.  Prisco, 168 F.3d at 602.  CERCLA addresses in particular the costs of responding to the release or threatened release of "hazardous substances," as that term is defined by CERCLA §101(14) (42 U.S.C. § 9601 (14)).

Accordingly, Section 107 of CERCLA provides a private right of action for the recovery of a plaintiff's response costs.  "In determining liability under § 107, the quantity or concentration of the hazardous substance is not a factor."  Id., citing United States v. Alcan Aluminum Corp., 990 F.2d 711 (2d Cir. 1993).

In order to make out a *prima facie* case under CERCLA § 107, Plaintiff must establish

five elements:

1.     The defendant falls within one of the four categories of potentially responsible parties ("PRPs") set forth in § 107(a);[1]

2.     The facility is a "facility" as defined by § 101(9) of CERCLA (42 U.S.C. § 9601(9)); [2]

3      There has been a release <u>or a threatened release</u> of hazardous substances at the facility;

4.     The plaintiff incurred costs in responding to the release or threatened release;

5.     The costs incurred conform to the National Contingency Plan ("NCP").[3]

<u>Prisco</u>, 168 F.3d at 602-03.

Once Plaintiff establishes these elements, the defendant Town is strictly liable for the

presence of the hazardous substances at the Landfill[4] -- that is, liable for the presence of the

---

[1] PRPs can be (i) the owner and operator of a facility,  (ii) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,  (iii) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances; and  (iv) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such persons.

[2] "The term 'facility' means (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel." <u>Id.</u>

[3] The term 'national contingency plan' means the national contingency plan published under section 1321(c) of Title 33 or revised pursuant to section 9605 of Title 42.  42 U.S.C. § 9601 (31).

[4]  There are statutory defenses set forth in § 107(b) which the Town has not invoked here.

hazardous substances regardless of whether it put them there.  It is not a defense that the particular hazardous substance attributable to a specific defendant is not linked to the plaintiff's response costs."  Id. at 603 (emphasis added), citing Betkowski, 99 F.3d at 514.  See also United States v. Alcan Aluminum Corp., 990 F.2d 711, 721 (2d Cir.1993) ("What is not required is that . . . a specific defendant's waste caused incurrence of clean-up costs");  New York v. Shore Realty Corp., 759 F.2d 1032, 1042 (2d Cir.1985)(where the Court refused to read a causation requirement into CERCLA section 107); accord Bedford Affiliates v. Sills, et. al, 156 F.3rd 416, 423-424 (1998).

### The Property need not be polluted

Significantly, even if the Plaintiff can not establish that his Property actually became polluted, the Town is still strictly liable under CERCLA for Plaintiff's response costs if the elements of CERCLA are established.  Plaintiff here is not required to prove that his Property was actually polluted, only that he incurred response costs addressing a release or threatened release.  See Ruling.

The State Court Decision ("SCD") and the Town's Answer have established four of these essential elements of Plaintiff's CERCLA claim.  Indeed, it is both undisputed and res judicata that (1) the Town is a PRP; (2) the landfill is a "facility" as defined by CERCLA; (3) there was a release and threat of future releases of hazardous waste from the Landfill; and (4) Plaintiff incurred response costs.  See Answer at ¶¶19-24; SCD at *1-2.

Thus, your charge is to determine: (1) whether Plaintiff's costs were in response to the undisputed release and/or threatened release of hazardous substances from the Landfill as defined by CERCLA; (2) whether those costs were in conformity with the NCP; and (3) whether those costs were necessary and reasonable.

(i) Response costs under CERCLA and consistency with the NCP

The law under CERCLA categorizes recoverable response costs as either associated with a "removal" or a "remediation" action.  See 42 U.S.C. §9601(23) and (24).  Removal costs are generally response limited to managing the problem on the short term; remediation refers to long term more permanent and expensive solutions.  BancAmerica Comm. Corp. v. Mosher Steel, 100 F.3d 792, 797 (1996).  Plaintiff asserts that his costs – i.e. those associated with testing, landscaping and attempts to protect his property – fall into the removal category.

The federal government has promulgated a voluminous set of federal regulations known as the National Contingency Plan (the "NCP") which detail the precise nature and extent of what the federal government expects on a CERCLA/Superfund type response or cleanup.  While the NCP is aimed at larger corporate and governmental actors (such as state DEPs and/or the EPA), it also contemplates response actions taken by private actors such as Mr. Doyle, and gives such actors more leeway with respect to the rules.[5]  If a private party

---

[5] NCP § 300.700 ("Activities by other persons") reads in relevant part:

   (a) General. . . . any person may undertake a response action to reduce or eliminate a release of a hazardous substance, pollutant, or contaminant.

such as Mr. Doyle acts in "substantial conformity" with the NCP as part of his or her

response, the expenses associated with these actions are recoverable under CERCLA.[6]

Before considering Plaintiff's compliance with the NCP, however, you must first

categorize Mr. Doyle's costs as either (1) initial investigation costs, or (2) response costs.

If you determine that certain of his costs were attributable to his initial investigation

costs, these costs are recoverable without consideration of compliance with the NCP.  See

Amland Prop Corp. v. Aluminum Co. of America, 711 F. Supp 784 (D.N.J. 1989); Artesian

Water Co. v. Government of New Castle, 659 F. Supp 1269 (D.Del. 1987).

---

(b) Summary of CERCLA authorities. The mechanisms available to recover the costs of response actions under CERCLA are, in summary:

(1) Section 107(a), wherein any person may receive a court award of his or her response costs, plus interest, from the party or parties found to be liable;

[6]  NCP § 300.700 (c)(3) reads:

(3) For the purpose of cost recovery under section 107(a)(4)(B) of CERCLA:

(i) A private party response action will be considered "consistent with the NCP" if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements in paragraphs (5) and (6) of this section, and results in a CERCLA-quality cleanup; and

(ii) Any response action carried out in compliance with the terms of an order issued by EPA pursuant to section 106 of CERCLA, or a consent decree entered into pursuant to section 122 of CERCLA, will be considered "consistent with the NCP."

See also Sealy Connecticut, Inc. v. Litton Industries, Inc., 93 F. Supp.2d 177, 187 (D. Conn. 2000)(Arterton, J.)(allowing CERCLA recovery based on substantial compliance by corporate plaintiff:  "In light of the Second Circuit's oft-cited instruction: "[i]t was Congress' intent that CERCLA be construed liberally to accomplish [the statute's] goals, [citation omitted] the Court concludes that in this case, Sealy has 'substantially complied' with the NCP.  To preclude Sealy from recovery based on its failure to prepare a feasibility study under these circumstances "would ignore the equitable component that Congress and the EPA built into the cleanup costs decisions").

For response costs, you must look to the NCP to see whether Mr. Doyle was in substantial compliance. NCP section 300.415(b) states that 'removal' actions are appropriate under CERCLA when the following conditions exist:

(i)     "actual or potential" exposure to "humans or animals;"

(ii)    "actual or potential contamination to drinking water;" . . .

(iv)    "high levels of hazardous substances, pollutants or contaminants that "may" migrate

Further, NCP section 300.415(b)(3) states that appropriate responses include responses designed to abate, mitigate, minimize, stabilize the threat. Finally, NCP section 300.415(e) defines the following as appropriate "removal" actions under the NCP:

(1)     Fences, warning signs, or other security or site control precautions-- where humans or animals have access to the release;

(2)     Drainage controls, for example, run-off or run-on diversion--where needed to reduce migration of hazardous substances or pollutants or contaminants off-site or to prevent precipitation or run-off from other sources, for example, flooding, from entering the release area from other areas;

(3)     Stabilization of berms, dikes, or impoundments or drainage or closing of lagoons--where needed to maintain the integrity of the structures;

(4)     Capping of contaminated soils or sludges--where needed to reduce migration of hazardous substances or pollutants or contaminants into soil, ground or surface water, or air;

(5)     Using chemicals and other materials to retard the spread of the release or to mitigate its effects--where the use of such chemicals will reduce the spread of the release.

Thus, if you find that certain of Mr. Doyle's costs were 'removal' costs incurred in substantial conformity with these definitions, you must find for Plaintiff and award him these costs.

(ii) Necessity and Reasonableness of the Expenses:

CERCLA also requires that the costs be "necessary" (as well as consistent with the NCP) to recover response costs.  See  42 U.S.C. § 9607(a)(4)(B).  The testing and sampling expenses discussed in this case are deemed "necessary" under CERCLA if Mr. Doyle had "an objectively reasonable belief that the release or threatened release of hazardous substances from the Landfill would contaminate his [] property."  Johnson v. James Langley Operating Co., Inc.  226 F.3d 957, 964-65 (8th Cir. 2000), citing Lansford-Coaldale Joint Water Auth. v. Tonolli Corp., 4 F.3d 1209, 1219 (3d Cir.1993) (CERCLA liability for testing requires that "there was a reasonable risk (although one that may not materialize) that the defendant's release or threatened release of hazardous substances would contaminate the plaintiff's property").  As with all response costs, monitoring and evaluation expenses must be incurred in a reasonable manner.  Id.

Response costs can also include attorney's fees if the attorney's work was in connection with the response and cleanup as opposed to the litigation of a plaintiffs' cost recovery claim under CERCLA.  See Key Tronic Corp. v. U.S., 511 U.S. 809, 819-821(1994)("[L]awyers' work that is closely tied to the actual cleanup may constitute a necessary cost of response in and of itself under the terms of [CERCLA]. . . Tracking down

other responsible solvent polluters increases the probability that a cleanup will be effective

and get paid for.  [Plaintiff] is therefore quite right to claim that such efforts significantly

benefited the entire cleanup effort and served a statutory purpose apart from the reallocation

of costs. These kinds of activities are recoverable costs of response clearly distinguishable

from litigation expenses [connected to a CERCLA cost recovery action"). See Sealy

Connecticut, Inc. v. Litton Industries, Inc., 93 F. Supp.2d 177 (D. Conn. 2000)(Arterton, J.)(

allowing recovery of attorney's fees associated with attorney's liaison and "shepherding"

efforts to effect cleanup were recoverable).

   You may also award interest.  See 42 U.S.C. §9607;  B.F. Goodrich v. Betkoski 99

F.3d 505, 28 (2d Cir 1996), clarified on other grounds on denial of rehearing, 112 F.3d 88

(2nd Cir. 1997).


**III.    PROPOSED JURY INTERROGATORIES (BY PLAINTIFF)**

   With respect to each item of claimed response cost:

   (1) Was the cost incurred in response to the undisputed release and/or threatened future

releases from the Landfill?

   (2) Was the costs in substantial conformity with the NCP.

        a.  Initial Investigation :  If you determine that the costs were initial

investigation costs, these costs are recoverable without consideration of compliance

with the NCP.

     b.  <u>Removal Costs</u>:  Did Mr. Doyle's costs substantially meet the definitions of removal costs described by the Court?

(3) Was the cost necessary and reasonable:

     a. <u>For drilling capping, grading and fencing</u>: Were these costs incurred in connection with Mr. Doyle's attempts to remedy and/or mitigate the threat posed by the Landfill?

     a. <u>For Testing/Experts:</u>  Did Mr. Doyle had an objectively reasonable belief that the release or threatened release of hazardous substances from the Landfill would contaminate his property?

     b. <u>For Attorney's Fees:</u>  Were the fees incurred in connection with Mr. Doyle's attempts to remedy and/or mitigate the threat posed by the Landfill and effect an appropriate cleanup?

(4) Apply interest calculation under 42 U.S.C. §9607.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 21, 2005, a copy of foregoing was filed electronically.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic

filing system.  Parties may access this filing through the Court's system.


/s/ George A. Dagon, Jr.
George A. Dagon